WARD *v.* FARRELL.

4-9931          253 S. W. 2d 353

Opinion delivered December 15, 1952.

*Lee Ward,* for appellant.

*Gerald Brown* and *Kirsch & Cathey,* for appellee.

WARD, Justice. Appellant, as a citizen and taxpayer of Greene County, brought this suit against appellee, the County Judge, to enjoin him from certain allegedly illegal practices and to recover for the County sums of money which he allegedly drew illegally and also sums in excess of his authorized salary as County Judge. The pleadings, in substance, are as set out below.

The complaint states, generally, that: appellee, for the years 1947 to 1951 inclusive, has drawn from the public funds over and above his authorized salary large sums under the guise of "expenses", and that he will continue to do so; appellee has procured and cashed the following warrants—(here is set out 63 in number totaling $4,350.75); he is drawing his salary in advance, and will continue to do so. The prayer was that appellee be enjoined from collecting "expense" money over and above his authorized salary and from collecting his salary in advance, and for recovery of $4,350.75.

Appellee filed a motion to make the complaint more definite and certain by pointing out in what respect each item is illegal and invalid. This same motion was also filed later, but on both occasions it was refused by the Chancellor. In our opinion had the motion been granted, it would have lent clarity to the proceedings that followed.

The answer alleges: a denial that appellee is drawing illegally amounts for "expenses"; that there is an adequate remedy at law by appeal from the County Court; that some of the warrants were for cash items such as wood, stamps, etc., which appellee paid for upon receipt with his own money and later filed his claim therefor, and that this was the custom; that the 3 years statute of limitations applies; that appellee, at all times covered by the suit, has been Ex-Officio Road Commissioner and entitled to draw expenses as such, and that his actual expenses have been more than the amounts drawn; that for the years 1949, 1950 and 1951 the quorum court appropriated funds in the sum of $100 per month, in advance, for expenses of the Road Commissioner; denies that he is wrongfully and unlawfully drawing his salary in advance, or that he will continue to do so; and that his accounts for the years 1947, 1948 and 1949 have been duly audited by the State Auditorial Department of the Comptroller's Office, that it is the duty of the Comptroller to demand payment for any liability and no such demand has been made by either the Attorney General or the Prosecuting Attorney, and that, therefore, this action by the appellant is premature.

A reply was filed by appellant denying appellee was Ex-Officio Road Commissioner, denying that the necessary expense for appellee as such road commissioner has been in *excess* of the amounts he has drawn, and denying all other allegations in the answer.

*Stipulation.* It was stipulated that appellee drew and cashed certain small warrants issued to him in instances where he had paid out his own money for wood, stamps, etc., and was reimbursed for same and that this had been the practice, but that he would not continue the practice; that appellee had drawn $100 per month as road commissioner each month since the suit was filed; that he drew $50 per month as such commissioner for the last five months in 1948, and that he drew $100 as commissioner for each month thereafter up to the time of filing this suit; that he would testify that for each and every month his expenses equaled or exceeded the amounts drawn; that the County received value for all items for which he was reimbursed; and that on November 19, 1951, the Quorum Court appropriated $600 for each of the years 1947 and 1948.

*Evidence.* Appellant introduced no witnesses and the only witnesses testifying for appellee were himself and Robert L. Wrape, the man who sold him the small amounts of fuel wood. There is little, if any, disagreement over the facts in this case. It is undisputed that appellee did draw some of his salary in advance; that he made no profit from the small out-of-pocket purchases and that the County got value received for all reimbursements; that there were no appropriations made by the Quorum Court for expenses of the Road Commissioner in 1947 and 1948, but were made or attempted to be made in 1951; and there was a proper appropriation for the year 1949. The exhibits show that the appropriations were by the Quorum Court supposedly for expenses of the Road Commissioner for the years 1949, 1950 and 1951, although the language employed could have been made plainer, as will be noted later.

At the conclusion of the hearing the Chancellor, after taking the matter under advisement and after the

presentation of briefs, made a comprehensive statement of facts and conclusions of law, and dismissed appellant's complaint. This statement evidences much thought and research, and we agree with many parts of it, but, for reasons hereafter set out, we have concluded the cause must be reversed for further proceedings. In the discussion that follows we have in mind that this case involves matters of public interest about which there seems to be more or less confusion, and that perhaps this fact justifies a consideration of some points that might not otherwise be required.

*The right of appellant to maintain this suit.* It is insisted by appellee that appellant, as a taxpayer, has no such right because of Act No. 41 of 1931 [part of which is *Ark. Stats.,* § 13-227]. This Act, as indicated above, invests the Comptroller's Office with the authority to audit county records and file same with certain officials to be used as evidence, etc. It is the view of appellee that this Act vests exclusive authority in the Auditorial Department of the State and in certain state and county officials to institute actions such as this one, and that appellant, therefore, has no such right. We do not agree with this contention. There is nothing in the Act itself which is susceptible to such an interpretation. Moreover, the right of an individual taxpayer to maintain such a suit is founded in Art. 16, § 13, of the State Constitution. This view has been sustained by this Court. In *Samples* v. *Grady,* 207 Ark. 724, 182 S. W. 2d 875, it was said:

"The Constitution (art. 16, § 13) provides that 'any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.' "

"This court has construed that provision to mean that a misapplication by a public official of funds arising from taxation constitutes an exaction from the taxpayers and empowers any citizen to maintain a suit to prevent such a misapplication of funds."

In *McLellan* v. *Pledger, County Treasurer,* 209 Ark. 159, 189 S. W. 2d 789, after quoting the section of the Constitution set out above, the Court referred to *Farrell* v. *Oliver,* 146 Ark. 599, 226 S. W. 529, and quoted therefrom as follows:

"There is eminent authority for holding, even in the absence of an express provision of the Constitution, such as referred to above, that a remedy is afforded in equity to taxpayers to prevent misapplication of public funds on the theory that the taxpayers are the equitable owners of public funds and that their liability to replenish the funds exhausted by the misapplication entitle them to relief against such misapplication."

*The three years statute of limitation applies here,* as is contended by appellee. Very much the same question was presented in the case of *State, Use and Benefit of Garland County, et al* v. *Jones, et al,* 198 Ark. 756, 131 S. W. 2d 612, where the court considered the application of the three years statute and also the five years statute and chose the former, using the following language:

"An analysis of such decisions as throw light upon the question here involved has convinced us that an action to recover money paid or obtained through an honest mistake of fact or law, in the absence of fraud, corruption, or wilful diversion, is an action founded upon an implied contract or liability, not in writing, and must be commenced within three years."

It was held in *Baker* v. *Allen,* 204 Ark. 818, 164 S. W. 2d 1004, that fees wrongfully withheld by the sheriff could not be collected from him where such fees were received more than three years before the suit was filed.

*Out-of-pocket payments by the County Judge.* It appears that appellee, thinking he was favoring the County by saving the expense of filing small claims, followed the custom of paying for small essentials such as wood, stamps, etc., out of his own funds and then allowing a claim against the County for reimbursement. It is not claimed that the County did not get full value or that he profited by such transactions. In commenting

on this practice the Chancellor stated there was nothing for him to do but hold it illegal. We agree with the Chancellor, on the authority of *Ark. Stats.,* § 22-612 and the inhibition in the Constitution [Art. 7, § 20] against a county judge passing on his own claim. During the hearing appellee stated that he would not continue such practice if it was held illegal and, on this statement by appellee, the Chancellor denied appellant's prayer for injunctive relief. We think the Chancellor was in error, or at least we think it would have been a more wholesome procedure to have granted the relief prayed for, particularly since a matter of costs was involved and there was no offer on the part of appellee to share the payment or any portion thereof. We also agree with the Chancellor that no recovery can be had against appellee for the amounts so received by him under the circumstances in this case and under the holding in the recent case of *Dowell* v. *School District No. 1, Boone County,* 220 Ark. 828, 250 S. W. 2d 127.

*Drawing Salary in Advance.* The county judge's salary is payable quarterly and it is not denied that in some instances appellee did draw his salary for the full period in advance, and it appears from the testimony that he might have quit this practice only after the suit was filed. Payment of salary is for services rendered and should not be paid until the services have been rendered. We do not agree with appellant that appellee had no right to allow a claim and issue a warrant for his own salary, because his salary is fixed by law and his actions therein involved no discretion. Under the authority of the *Dowell* case cited above, the Chancellor was correct in refusing to require appellee to repay that portion of his salary drawn in advance, but, for reasons before-mentioned, he should have enjoined such practice in the future.

*Ex-Officio Road Commissioner.* It is the contention of appellant that appellee had no right to draw expense money as Ex-Officio Road Commissioner because no such office or position exists. This contention cannot be sustained.

Act 97 of 1929, § 2, provides that "Each of the County and Probate Judges is hereby made Ex-Officio Road Commissioner of his county . . ." and further provides that the quorum court may make appropriations for their expenses. This section of said Act 97 has never been repealed and is still the law. To determine this fact it was necessary to examine a large number of other related acts. Without going into unnecessary details a summary of our investigation will suffice.

The original act dealing with county judges' salaries and Ex-Officio Road Commissioners was Act 140 of 1927. Section 1 of this Act fixed the salaries of all county judges in the State on a county basis, while § 2 created the position of Ex-Officio Road Commissioners. Act 59 of 1929 amended § 2 of said Act 140 by re-enacting the same but fixing the expenses of the Ex-Officio Road Commissioner in Conway County at $1,000 per annum. Said Act 97 was re-enactment of Act 140 except that in fixing all county judges' salaries it changed some and left off the provision about Conway County. Following the passage of Act 97 of 1929 the Legislature passed a large number of acts amending § 1 of said Act 97, re-writing the entire section, apparently for the purpose of changing some of the judges' salaries, but none of these acts repealed or changed § 2 of Act 97 which provides for Ex-Officio Road Commissioners. An additional indication that the Legislature meant to retain Ex-Officio Road Commissioners is the fact that all the amendatory acts referred to contained a proviso that in White County the judge's salary should include his expenses.

In this connection it must be noted that appellant contends Ex-Officio Road Commissioners were done away with by the Legislature by the passage of Act 379 in 1939. This Act creates a County Highway Commission composed of the County Judge and two members appointed by him with the approval of the levying court, and provides that the two appointed members shall draw $5 per day (for not more than 12 days in any one year) as compensation. It is our view that said Act 379 is in

no way inconsistent with the retention of Ex-Officio Road Commissioners, particularly since the Act itself contains no such repealing clause.

*Appropriations by the Quorum Court.* Appellant argues that even though it be conceded the office of Ex-Officio Road Commissioner does exist there were no legal appropriations made for such expenses by the Quorum Court in this instance. Possibly this contention does not go to the years 1949, 1950 and 1951, but if it does we cannot agree with appellant. The record shows, for the first year, "Expenses of County Judge as Road & Bridge Comm., $1,200.00." Certainly the insertion of the word "Bridge" in the appropriation item is no indication that it was meant for anything other than expenses for road commissioner. For the other two years the appropriation item reads "County Judge Car Expense, $1,200.00." Of course, this language might have been improved upon and made more definite, yet the Act does not set forth any required language for appropriations, and since there is no showing or contention that the money was intended or used for any other purpose than expenses for Ex-Officio Road Commissioner, we deem it a sufficient compliance with the law for that purpose.

*No Appropriation for 1948.* The matter of an appropriation for 1948 presents a different situation from that obtaining for the years following, as discussed above. Since, as indicated above, the three years statute of limitations applies and this suit was filed on July 23, 1951, this leaves for our consideration the period of time from July 23, 1948, to January 1, 1949. The record reflects that no appropriation by the Quorum Court for expenses of the County Judge as Ex-Officio Road Commissioner was made for 1948 either during that year or the year preceding. The record does reflect, however, that on November 19, 1951, after the filing of this suit, the Quorum Court met and made, or attempted to make, an appropriation for said purpose the amount of $600 for the year 1948 [and 1947].

It is the contention of appellee that no appropriation of any kind was necessary in order for it to be legal

for the County Judge to draw money from the County as Ex-Officio Commissioner. This contention is based on dubious authority. It is admitted that the case of *Ladd* v. *Stubblefield,* 195 Ark. 261, 11 S. W. 2d 555, holds that an appropriation is necessary, but appellee attempts to explain that the decision probably would have been different had the court known [or had called to its attention] that Johnson County was exempt from the provisions of Act 217 of 1917 [by later enactment]. Without speculating on what the court might have done in the cited case, we point out that in this case we are concerned with Act 97 of 1929 and not with said Act 217. The wording in § 2 of Act 97 convinces us that it was the intention of the Legislature that no money should be paid to the county judges as Ex-Officio Road Commissioners unless the quorum court first made an appropriation for that purpose. Having said this it follows that the attempted appropriation made by the quorum court of Greene County on November 19, 1951, was ineffectual to validate the expenditure of $600 in 1948 as expenses for the County Judge [as Ex-Officio Road Commissioner] in that year.

It does not follow from the above, however, that the Chancellor should have ordered the County Judge to reimburse the County for the amount he drew as Road Commissioner from July 23, 1948, to January 1, 1949, at the rate of $50 per month. If appellee actually spent his own money or incurred actual expenses in the discharge of his duties as road commissioner and Greene County received full benefit therefor, and if he can by detailed evidence establish these to be facts, he should be given credit therefor against the money he received from the County during the period of time in question. If such credits do not equal the amount of money drawn, he should, of course, be required to reimburse the County for the difference. Again we reach this conclusion under the authority in the *Dowell* case, *supra.*

Since the case was not developed on the above point, appellee should be given an opportunity to show, in the manner indicated above, to what extent he actually incurred expenses as Ex-Officio Road Commissioner from

July 23, 1948, to January 1, 1949, and further show that such expenditure by the county did not cause the total expenditures for the year 1948 to exceed the revenues for the same year. The latter requirement is necessary under the provisions of Amendment 10 to the State Constitution which prohibits counties from spending in excess of their revenues. Since the adoption of Amendment 17 we have held that amendment must be strictly construed.

In view of what we have heretofore said, this cause is reversed and remanded to the trial court with the following instructions:

The trial court is instructed: (a) to enjoin the appellee from issuing and accepting warrants in payment for out-of-pocket cash items as heretofore referred to, and from drawing his salary in advance; and (b) to give appellee an opportunity to justify his acceptance of expenses as Ex-Officio Road Commissioner for part of the year 1948 as referred to previously.