THERON S. McGHEE ET AL v. W. A. GLENN, COUNTY JUDGE

5-4502                                    428 S. W. 2d 258

Opinion delivered May 27, 1968

*Thorp Thomas,* for appellants.

*Jack L. Lessenberry,* for appellee.

LYLE BROWN, Justice. Theron McGhee and other taxpayers of Perry County brought this suit in 1966 to enjoin County Judge W. A. Glenn from using county labor and equipment on private property. They also sought a money judgment against Judge Glenn to reimburse the county. A permanent injunction was granted but compensation was denied. From the disallowance of a money judgment the taxpayers appeal.

At the time of the trial in 1967, Judge Glenn was in his eleventh year as presiding judge of the county court. During his tenure numerous private property owners had been the recipients of work projects performed with county labor and equipment, including work on three farms owned by the judge himself. There was no direct payment to the county. Among other powers the county court has exclusive original jurisdiction over all matters relating to county roads and bridges; it has control and management of all county property,

which of course includes varied types of road machinery. Ark. Stat. Ann. § 22-601 (Repl. 1962). It is the county court, not the county judge, in which these responsibilities and powers are vested. *Needham* v. *Garner*, 233 Ark. 1006, 350 S. W. 2d 194 (1961). It is not clear whether any or all the projects were performed (1) solely at the direction of the county judge, (2) under orders duly entered by the county court, or (3) possibly by virtue of an order entered by the quorum court. More will be said about this deficiency, which we consider significant.

The taxpayers asserted that the county was entitled to be compensated for six projects. For the purpose of this opinion they fall into four categories:

*Project One.* This project concerned work performed on property owned by Joe Majors and Virgil Pearson. In response to a motion by Judge Glenn to make more definite and certain the taxpayers listed thirteen projects which they considered illegal. The Majors-Pearson project was not listed. The trial judge, and properly so, restricted the taxpayers to those projects enumerated.

*Projects Four and Five.* These ventures involved work performed on lands belonging to Bossy Glenn and on Judge Glenn's farm east of Adona. If the claim to compensation were otherwise valid, they would be barred by the statute of limitations. The best evidence is to the effect that the work was performed in 1958, 1959, and 1960. The claim would be governed by our three-year statute of limitations. Ark. Stat. Ann. § 37-206 (Repl. 1962).

*Project Two.* Work was performed on town lots owned by O. O. Oates and his son. There was substantial evidence to show that over the years Mr. Oates had given to the county several hundred loads of gravel and shale from his farm. The material was used on the county roads. Judge Glenn considered the work performed for

the Oateses to be small pay for the large quantities of raw materials Mr. Oates had furnished gratis to the county. The chancellor's finding that Judge Glenn had acted in good faith cannot be said to be against the preponderance of the evidence. Of course this is not to say that the correct procedure was followed.

*Projects Three and Six.* Project Three involved improvements made on the county judge's farm at Perry. Project Six consisted of work done on his farm west of Adona. Our discussion to follow will be in relation to those two projects. For the improvements there constructed, Judge Glenn may be liable, depending on certain elements of proof which should be developed on remand.

On one of the vital points in this case our law is very clear. A county judge, as distinguished from the county court, has no authority to use county machinery on private property for private use. *Needham v. Garner, supra.* Further, Ark. Stat. Ann. § 22-612.1 (Repl. 1962) makes it unlawful for any county judge to be interested, directly or indirectly, in any transaction made on behalf of the county, or to receive anything of value for his benefit on account of any transaction made for the county. It constitutes a violation of that statute if a county judge is interested in an improvement where the county contributes to the improvement with its labor and machinery just as much as if the county had paid out cash. *State v. Anderson,* 200 Ark. 588, 139 S. W. 2d 682 (1940). It was unquestionably established that county machinery and labor were utilized on Projects Three and Six.

In face of the recited law and the established facts, a determinative element could possibly be the existence of a court order authorizing the projects. See *Hutson v. State,* 171 Ark. 1132, 287 S. W. 398 (1926).[1] On this

---

[1] Judge Glenn also stated—only as a conclusion—that the work on his Perry farm reduced flooding of adjacent highways. *Quantum*

point the record is far from satisfactory. The taxpayers' attorney was questioning Judge Glenn concerning work performed with county labor and equipment on his brother's farm:

"Q. Do you know to your personal knowledge when this work up at Bossy Glenn's place took place?

"A. Yes, sir.

"Q. When was it?

"A. 1961.

"THE COURT:

Before you terminate this let me ask a question of Judge Glenn; I notice this suit is against the County Judge and you in your representative capacity; Judge Glenn, have each of these occasions where work has been done have you been acting in your capacity as County Judge and exercising your judgment to the best of your ability in a judicial capacity?

"A. Judge Williams, I sure have.

"MR. THOMAS:

Did the Quorum Court ever enter an order authorizing you to do that?

"A. Yes, they did."

We are unable to determine with certainty whether

*meruit* has been held to be a valid defense in certain situations. See *Dowell* v. *School District No. 1, Boone County*, 220 Ark. 828, 250 S. W. 2d 127 (1952); and *Ward* v. *Farrell*, 221 Ark. 363, 253 S. W. 2d 353 (1952).

Judge Glenn purported to testify that the quorum court authorized all the projects to which the court's question was directed, or whether he was asserting that the quorum court authorized the work on Bossy Glenn's farm. The latter was the subject matter of Attorney Thomas' questioning before the chancellor interjected his question. Additional confusion arises from the fact that the term "quorum court" is used rather than "county court." The principal duties of the quorum court are to levy county taxes and make appropriations for public purposes. It is difficult to believe the quorum court would authorize numerous specific work projects on private property. The matters for which it makes appropriations are specified under eight headings and none of those items even remotely touch on private projects. Ark. Stat. Ann. § 17-409 (Repl. 1956).

This court was faced with an analogous situation in *Ward* v. *Farrell*, 221 Ark. 363, 253 S. W. 2d 353 (1952). There the county judge was sued for the recovery of moneys drawn in his capacity as Road Commissioner. The record was incoherent on a vital point. Judge Farrell had expended his own money and subsequently drew funds to reimburse himself. The record was not clear whether Greene County received full benefit for the claimed expenses. In that situation this court remanded the case for further development of that point in order to give Judge Farrell an opportunity to show to what extent he actually incurred necessary expenses.

In the case at bar, it can be forcefully argued that the burden was on the taxpayers to establish the absence of judicial authority for these two projects on Judge Glenn's farms. On the other hand, it can be logically reasoned (1) that there is no statutory authority to be found under any circumstances for the projects to have been performed; (2) the law is clear that a county judge, as distinguished from the county court, is strictly prohibited from authorizing the projects; and (3) it was not disputed that the work was in fact performed. In

view of the law and undisputed facts it can be reasoned that a court order authorizing the work would be in the nature of an affirmative defense to be produced by Judge Glenn. However, we do not find it necessary to fix the responsibility for presenting the proof. We try the case de novo and we find the record so confused on this particular point that no court can do equity to either of the litigants. In that situation we feel justified in following the procedure in *Ward* v. *Farrell, supra.*

The taxpayers offered testimony relating to the cost of Projects Three and Six. They employed a registered professional engineer who inspected the projects for the purpose of testifying. That inspection was very brief, and long after completion; in his own words he was "at the mercy of my source of information which tells me that certain things took a certain amount of time"; whether all of the levees and flood gates as to Project Three are on private property is not clear; and the exact source of the materials there used—tile and flood gates—is not clear. On retrial, if the court reaches the question of compensation, the subject should be more satisfactorily developed. The measure of recovery would be the price the landowner would have had to pay for machinery, labor, and materials on the competitive market at the time of construction.

We do not disturb the order of the chancellor permanently enjoining the county judge from the illegal use of county equipment on private property for private benefit. In fact there is no appeal on that point. We remand for further proceedings with respect only to those projects we have designated as numbers three and six.

Affirmed in part, reversed in part.