## William G. FORD *v.* ARKANSAS GAME and FISH COMMISSION

97-1016                                               979 S.W.2d 897

Supreme Court of Arkansas
Opinion delivered November 19, 1998

*Bowden Law Firm*, by: *David O. Bowden*, for appellant.

*James F. Goodhart* and *James B. Watson; Friday, Eldredge & Clark,* by: *Robert S. Shafer, David D. Wilson & Ellen M. Owens,* for appellees.

ANNABELLE CLINTON IMBER, Justice. The appellant, William G. Ford, filed a declaratory-judgment action against the appellees, the Arkansas Game and Fish Commission (Commission), Ray Sebren, individually and in his official capacity as Chief of the Fiscal Division of the Commission, and Steve N. Wilson, individually and in his official capacity as Director of the Commission. The trial court dismissed Ford's action without prejudice because Ford failed to exhaust his administrative remedies. We affirm.

On September 2, 1996, the Arkansas Game and Fish Commission cited Ford for possession of a quail out of season in violation of Regulation No. 18.010 and for having an unplugged shotgun in violation of Regulation No. 13.050. The citations notified Ford that he was scheduled to appear in the Sheridan Municipal Court on September 24, 1996, and that he could forfeit a bond in lieu of appearance. Ford paid a $400 bond and did not appear at the September 24, 1996 hearing.

On November 6, 1996, the Commission sent Ford a letter informing him that his hunting and fishing privileges "have been suspended for a period of three years" because Ford had accumulated more than thirty points "under the Hunting and Fishing Violations Point System established by Section 01.00-J, 08-90 Regulations." The two September 2, 1996 violations were the only listed offenses. The letter also contained the following notification:

> Section 25-15-201 et seq. of the Arkansas Code Annotated provides you with an opportunity for a review of your violation record in connection with your suspension. This review is for the purpose of determining whether the correct number of points were assessed, if they were assessed to the right person, and if the person's violation record is correct. If the hearing officer finds these factors to be correct the suspension will stand. If you desire such a review, you must notify this Department in writing before the expiration of the tenth (10) [*sic*] day following your receipt of this letter. Should you request a review, your suspension will

be held in abeyance until final disposition of your review. If you do not request a review, your suspension will become effective on the eleventh (11th) day following receipt of this letter and you must surrender your hunting and fishing licenses, if any, to this Department.

On November 19, 1996, Ford sent the Commission a written request for a hearing. In his letter, Ford declared that pursuant to section 25-15-201 of the Arkansas Administrative Procedures Act he was entitled to a more extensive hearing than described in the Commission's November 6, 1996 letter. Specifically, Ford claimed that the scheduled hearing did not afford him the opportunity to challenge the statutory and constitutional authority for the Commission's actions.

On November 21, 1996, Ford filed a declaratory-judgment action in the Grant County Circuit Court. In his complaint, Ford alleged that the Commission's rules and actions were unconstitutional, and that the Commission had violated his civil rights under the Arkansas and federal civil rights acts. Ford asked for declaratory relief, damages, and attorney's fees.

On January 13, 1997, the Commission granted Ford's request for a hearing, which was scheduled for February 7, 1997. On January 16, 1997, Ford sent a letter to the Commission asking that the "administrative hearing be held in abeyance until such time as the lawsuit [the declaratory-judgment action] is considered." The Commission granted Ford's request on January 23, 1997. Since that time, the Commission has not taken any action, and the suspension of Ford's licenses has been held in abeyance pending the resolution of the circuit court proceeding.

On February 27, 1997, the Commission filed a motion to dismiss alleging that Ford failed to exhaust his administrative remedies, and that venue was improper. On May 19, 1997, the trial court entered an "order of dismissal without prejudice," because Ford "failed to exhaust his administrative remedies by failing to participate in the administrative hearing offered by the Arkansas Game Commission concerning the suspension of hunting and fishing privileges." The court did not render a ruling on the venue issue because it was moot.

## I. Standard of Review

■ ■ Before addressing the merits of the arguments raised on appeal, we must determine the appropriate standard of review. As previously mentioned, the Commission filed a "motion to dismiss," and the trial court entered an "order of dismissal." However, in the first paragraph of the order, the court declared that it had considered "the law, facts, exhibits and arguments of counsel." Pursuant to Ark. R. Civ. P. 12(b) and (c) a motion to dismiss is converted into a motion for summary judgment when matters outside of the pleadings are presented to and not excluded by the court. *See McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583 (1998); *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). Because it is clear from the wording of the order that the trial court considered matters outside of the pleadings, we hold that the order is one for summary judgment.

■ As we have said on numerous occasions, summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998); *Youngman v. State Farm Mut. Auto. Ins., Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998); *Stapleton v. M.D. Limbaugh Constr. Co.*, 333 Ark. 381, 969 S.W.2d 648 (1998). In making this determination, we review the evidence in the light most favorable to the party resisting the motion and resolve all doubts and inferences in their favor. *Nelson, supra; Youngman, supra; Stapleton, supra.*

## II. Exhaustion of Administrative Remedies

For his first argument on appeal, Ford claims that section 25-15-207 (Repl. 1996) of the Administrative Procedures Act allows him to file a declaratory-judgment action in circuit court without first exhausting his administrative remedies before the Commission. In deciding this issue, it is important to note that we are not addressing the merits of Ford's constitutional challenges and his civil rights arguments. Instead, we are merely deciding whether Ford was required to obtain a final ruling from the Commission before filing his action in the circuit court. Moreover, we do not,

at this time, render any ruling as to whether the Game and Fish Commission is legally bound by the terms of the Administrative Procedures Act, Ark. Code Ann. §§ 25-15-101 to 214 (Repl. 1996). In this case, the Commission voluntarily chose to proceed under the Administrative Procedures Act as indicated in its November 11, 1996 letter to Ford. Moreover, the Commission conceded as much during oral argument. These matters aside, we now proceed to the merits of Ford's arguments.

## A. Constitutional Arguments

In his complaint, Ford made several constitutional arguments some of which were independent and distinct from his civil rights claims. As to his constitutional arguments, Ford contends that section 25-15-207 allows him to file a declaratory-judgment action in circuit court without first exhausting his administrative remedies before the Commission. We disagree.

Section 25-15-207 provides that:

(a) The validity or applicability of a rule may be determined in an action for declaratory judgment if it is alleged that the rule, or its threatened application, injures or threatens to injure the plaintiff in his person, business, or property.

(b) The action may be brought in the circuit court of any county in which the plaintiff resides or does business or in the Circuit Court of Pulaski County.

(c) The agency shall be made defendant in that action.

(d) A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question.

We have held in numerous cases that a litigant must exhaust his or her administrative remedies before instituting litigation to challenge the action of an administrative agency, except where it would be futile or where there was no genuine opportunity to do so. *See, e.g., McCullough v. Neal,* 314 Ark. 372, 862 S.W.2d 279 (1993); *Hankins v. McElroy,* 313 Ark. 394, 855 S.W.2d 310 (1993); *Arkansas Motor Vehicle Comm'n v. Cantrell Marine, Inc.,* 305 Ark. 449, 808 S.W.2d 765 (1991). We have also applied this common-

law rule to declaratory-judgment actions filed under Ark. Code Ann. § 25-15-207. *See Regional Care Facilities, Inc. v. Rose Care, Inc.*, 322 Ark. 780, 912 S.W.2d 406 (1995); *McEuen Burial Assoc. v. Arkansas Burial Ass'n Bd.*, 298 Ark. 572, 769 S.W.2d 415 (1989).

Specifically, in *Regional Care*, the Arkansas Health Services Commission issued Regional Care a permit of approval to build a nursing facility. *Regional Care, supra.* Rose filed a notice of appeal asking the Commission to reconsider its decision. *Id.* While the matter was pending before the Commission, Rose filed a declaratory-judgment action in the circuit court. *Id.* On appeal, Rose argued that pursuant to Ark. Code Ann. § 25-25-207(d) it was not required to exhaust its administrative remedies before seeking a declaratory order from the court. *Id.* We explained that:

> "It seems to be now a recognized doctrine that requires administrative relief to be sought before resorting to declaratory procedure, wherever administrative relief is afforded and this requirement is not one merely requiring the initiation of administrative procedure, but the administrative procedure must be pursued to its final conclusion before resort may be had to the court for declaratory relief" . . . declaratory relief is not proper when the identical questions involved in the declaratory proceeding are already at issue between parties in a pending action.

*Id.* (quoting *Rehab Hosp. Serv. Corp. v. Delta-Hills Health Sys. Agency, Inc.*, 285 Ark. 397, 687 S.W.2d 840 (1985)). Because Rose filed the declaratory-judgment action before the Commission held its hearing on Rose's motion for reconsideration, we held that Rose failed to exhaust its administrative remedies. *Id.*

█ As in *Regional Care*, the Commission exercised jurisdiction over the matter by notifying Ford of its intention to revoke his hunting and fishing licenses, and Ford requested an administrative hearing. Hence, it is clear that Ford was not entitled to file a declaratory-judgment action under Ark. Code Ann. § 25-15-207 before he exhausted his administrative remedies before the Commission. Instead of filing a declaratory-judgment action, Ford should have raised his constitutional arguments before the Commission, and then appealed the Commission's final ruling to the

circuit court pursuant to Ark. Code Ann. § 25-15-212 (Repl. 1996).

## B. Federal and State Civil Rights Acts

As mentioned previously, in addition to his constitutional arguments, Ford also claimed that the Commission had violated his civil rights. Thus, we must now decide whether a litigant must exhaust his or her administrative remedies before filing a civil rights action under either the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 to 108 (Supp. 1997) or the Federal Civil Rights Act, 42 U.S.C. § 1983. We have never previously addressed this issue. However, section 16-123-105(c) of the Arkansas Civil Rights Act provides that:

> When construing this section, a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983, as in effect on January 1, 1993, which decisions and act shall have persuasive authority only.

Thus, we must look to the Federal Civil Rights Act and the cases interpreting it in order to find a resolution to this important issue of first impression.

The United States Supreme Court has held that a litigant is not required to exhaust his or her administrative remedies before filing a civil rights action in federal courts. *Patsy v. Florida Bd. of Regents*, 457 U.S. 496 (1982); *McNeese v. Board of Educ.*, 373 U.S. 668 (1963). In *Felder v. Casey*, 487 U.S. 131 (1988), the United States Supreme Court extended this holding to civil rights actions that are filed in state courts. However, all three cases are distinguishable from the facts at hand because in those cases the state actor had already deprived the petitioner of his or her civil rights at the time that the lawsuit was filed. *See Felder, supra* (claim that police officers had beaten and arrested the petitioner); *Patsy, supra* (claim that Florida International University had denied the petitioner employment due to her race and gender); *McNeese, supra* (claim that the Illinois school district had failed to desegregate the public schools).

In the case before us today, it is uncontested that the Commission has not yet suspended or "taken" Ford's hunting and fishing licenses. In fact, the Commission agreed to hold the suspension "in abeyance" pending the outcome of Ford's action in circuit court. Simply put, the Commission has not yet taken any final action that would arguably amount to a civil rights violation.

■ Similar to this case, in *Williamson Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1986), the respondent filed a civil rights claim under 42 U.S.C. § 1983 in which it alleged that the Williamson County (Tennessee) Regional Planning Commission had unconstitutionally "taken" its property. On appeal, the United States Supreme Court held that the case was not yet ripe because the commission had not yet taken any final action. *Id.* Particularly applicable to the case at hand, the Court further explained in *Williamson* that:

> The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable. *See FTC v. Standard Oil Co.*, 449 U.S. 232, 243 (1980); *Bethlehem Steel Corp. v. EPA*, 669 F.2d 903, 908 (CA3 1982). *See generally* 13A C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3532.6 (1984). While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy* concerned the latter, not the former.

*Id.*

■ As in *Williamson*, the Commission has not yet taken any final action that could arguably amount to a deprivation of Ford's civil rights. Thus, Ford's claims under either the Arkansas Civil Rights Act or the Federal Civil Rights Act are not yet ripe for judicial review. Accordingly, we affirm the trial court's order of dismissal.

### III. Venue

█ Finally, the Commission argues that we should affirm the court's order of dismissal because venue was improper in the Grant County Circuit Court. Yet, the Commission admits that the trial court did not render a ruling on the venue issue because it was moot. As we have said on numerous occasions, the failure to obtain a ruling below bars review of the issue on appeal. *See, e.g., Jackson v. State*, 334 Ark. 406, 976 S.W.2d 370 (1998); *Higginbotham v. Junction City Sch. Dist.*, 332 Ark. 556, 966 S.W.2d 877 (1998). Accordingly, we refuse to address the venue issue at this time.

Affirmed.