Sharon McGHEE, Sidney McGhee, Clarice Davis, Roberto Salas, Charles Stewart, Henry Evans, and Ladonna Payte, Individually and on Behalf of a Class of Similarly Situated Persons *v.* ARKANSAS STATE BOARD of COLLECTION AGENCIES and Rusty Guinn, Jerry Markham, Randy Bynum, Opal Lang and James Mitchell, in Their Official Capacities as Board Members of the Arkansas State Board of Collection Agencies

04-199                                                   201 S.W.3d 375

Supreme Court of Arkansas
Opinion delivered January 20, 2005

*Todd Turner* and *Dan Turner*, for appellants.

*Mike Beebe*, Att'y Gen., by: *Arnold M. Jochums*, Ass't Att'y Gen., for appellee.

*Richard C. Downing*, Amicus Curiae.

ANNABELLE CLINTON IMBER, Justice. This is an action pursuant to Article 16, Section 13, of the Arkansas Constitution to protect the taxpayers of the State of Arkansas from alleged misuse of public funds by the Arkansas State Board of Collection Agencies ("the Board") in licensing and regulating check-cashing businesses that charge usurious interest rates under the Check-Casher's Act, Ark. Code Ann. § 23-52-101, *et seq*. (Repl. 2000 and Supp. 2003). Our common law makes an illegal-exaction suit under Article 16, Section 13, of the Arkansas Constitution a class action as a matter of law. *Worth v. City of Rogers*, 351 Ark. 183, 89 S.W.3d 875 (2002). An illegal-exaction claim is by its nature in the form of a class action. *Id*. An illegal-exaction suit is a constitutionally created class of taxpayers, and suit is brought for the benefit of all taxpayers. *Id*.

The Board has established a Division of Check-Cashing to administer the licensing and regulation of payday lenders. Under the statute, licensed persons are authorized to sell currency or a check to another person in exchange for a check. *See* Ark. Code Ann. §§ 23-52-102(4)—109. Often check-cashers will offer a "deferred-presentment option" whereby the check-casher, in exchange for a fee, allows the customer the option to repurchase the customer's personal check before an agreed upon time. Ark. Code Ann. § 23-52-102(5). Prior to the filing of the current case, one of the appellants, Sharon McGhee, on behalf of a class of persons with causes of action against AAA Check Cashing, Inc. ("AAA"), had received a class-action monetary judgment against AAA as a result of deferred presentment transactions. In her capacity as class representative, McGhee had filed a claim with the Board to recover the damages awarded in the judgment from Old Republic Insurance Co., Inc., AAA's surety. At the time the present complaint was filed, the Board had not issued a ruling in that administrative proceeding.

In the complaint filed in the instant case, the appellants maintain that all transactions under the Check-Casher's Act involve interest rates that violate the usury provisions of the Arkansas Constitution. Ark. Const. Art. 16, § 13. Appellants further allege

that the Board's Division of Check–Cashing has used public funds to finance its operations, and that such use constitutes an illegal exaction under Ark. Const. Art. 16, § 13. Appellants filed this case on April 23, 2003, seeking injunctive relief to prohibit the Board from the continued licensing of check cashers and a declaratory judgment that the Check Casher's Act is unconstitutional. Appellees responded to the suit by filing a motion to dismiss, asserting five grounds for dismissal: (1) that the claim for declaratory relief was barred while the administrative process was ongoing; (2) that the appellants lacked standing; (3) that the appellees were immune from suit; (4) that the appellants had failed to join all interested parties; (5) that the plaintiffs had failed to state facts upon which relief can be granted. Appellants responded and moved for partial summary judgment on their claim for declaratory relief. At the August 22, 2003 hearing, the circuit court stated, "It's not my place to declare something unconstitutional." Subsequently, the circuit court granted the appellees' motion to dismiss on all five grounds and ruled that the appellants' motion for partial summary judgment on the constitutionality of the statute was thus rendered moot. On appeal, the appellants argue the circuit court not only erred in dismissing the case, but also in determining that it could not rule on the constitutional issue, and in failing to grant the appellants' partial summary-judgment motion.

With regard to the constitutionality of the Check–Casher's Act, Ark. Code Ann. § 23-52-101, *et seq.*, this court has jurisdiction to hear issues concerning the validity of an act of the General Assembly pursuant to Ark. Sup. Ct. R. 1-2(b)(6). In deciding whether a motion to dismiss a complaint was properly granted, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Hodges v. Lamora,* 337 Ark. 470, 989 S.W.2d 530 (1999). Furthermore, we look only to the allegations in the complaint and not to matters outside the complaint. *Id.*

The first rationale given by the circuit court for granting the appellees' motion to dismiss was "that the claim for declaratory relief is barred while the administrative process is ongoing." Appellees, in support of this ruling, note the existence of a previous action that was commenced before the Board. However, the parties in both actions are not the same. Here, all Arkansas taxpayers are the appellants; whereas, Sharon McGhee filed the administrative complaint before the Board only on behalf of persons with causes of action against AAA, i.e., certain custom-

ers of AAA. Furthermore, the issues in both cases are not similar. In the case before the Board, the issue was whether Old Republic Insurance Co., Inc., as a surety, was liable on a judgment against the insured, AAA Check Cashing, Inc. Here, the issue is the alleged misuse of public funds to support the Board's Division of Check-Cashing and the constitutionality of Ark. Code Ann. § 23-52-101, *et seq.* While Appellant Sharon McGhee does have to wait for the Board's judgment before appealing the surety question, the pendency of that administrative process does not prevent the appellants from filing a new and separate cause of action for illegal exaction. Accordingly, we conclude that the circuit court erred when it found that the claim was barred by this unrelated administrative claim.

The dissent argues that the appellants must exhaust all administrative remedies before an illegal-exaction suit may be brought against the Board in the circuit court. As posited by the dissent, the doctrine of exhaustion of administrative remedies not only requires parties to follow through on matters already before the agency, but also requires them to bring an illegal-exaction claim before the agency prior to filing suit. Yet, neither the appellants nor the appellees have cited a case in which an illegal-exaction suit was initiated before a board, agency or commission, and our research discloses none. This court has, however, decided at least four cases involving the actions of a board in which an illegal-exaction suit was initiated either in circuit court or chancery court. *Carwell Elevator Co., Inc. v. Leathers,* 352 Ark. 381, 101 S.W.3d 211 (2003); *Leathers v. Gulf Rice Arkansas, Inc.,* 338 Ark. 425, 994 S.W.2d 481 (1999); *State Bd. of Workforce Educ. v. King,* 336 Ark. 409, 985 S.W.2d 731 (1999); *Chandler v. Board of Trustees of the Teacher Retirement System,* 236 Ark. 256, 365 S.W.2d 447 (1963). All of those suits were initiated in circuit or chancery court, decided, and appealed. This court decided the appeals without imposing an exhaustion-of-administrative-remedies requirement.

At least two other reasons militate against imposing such a requirement upon suits filed by citizens to enjoin "the enforcement of any illegal exaction whatever" under Article 16, Section 13 of the Arkansas Constitution. First, it is well established that Ark. Const. Art. 16, § 13 is self-executing and imposes no terms or conditions upon the right of the citizen to file suit to prevent an illegal exaction. *Saunders v. Neuse,* 320 Ark. 547, 898 S.W.2d 43

(1995); *Martin v. Couey Chrysler Plymouth, Inc.*, 308 Ark. 325, 824 S.W.2d 832 (1992); *Starnes v. Sadler*, 237 Ark. 325, 372 S.W.2d 585 (1963).

Second, the dissent's proposed application of the exhaustion-of-administrative-remedies doctrine, if adopted by this court, would preclude a taxpayer from bringing an illegal-exaction suit if any proceeding involving another taxpayer is pending before an agency, board or commission that is the subject of the challenge. Here, a group of plaintiffs — certain customers of AAA — filed a claim with the Board seeking to hold AAA's surety liable on a judgment against its insured. The dissent urges that the existence of that claim precludes any other taxpayer from bringing an illegal-exaction suit for the benefit of all taxpayers under Ark. Const. Art. 16, § 13. As noted earlier, an illegal-exaction suit is a constitutionally created class of taxpayers, and suit is brought for the benefit of all taxpayers. *Worth v. City of Rogers, supra*. The end result of that approach would be that any taxpayer involved in a proceeding before an agency must raise an illegal-exaction claim under Ark. Const. Art. 16, § 13, thereby effectively foreclosing any other taxpayer from bringing such a suit in circuit court. Furthermore, even if there is no proceeding pending before the agency, taxpayers would be required to institute illegal-exaction claims at the board level before they could file suit in circuit court. Such a result is not supported by the Arkansas Constitution or our case law.

■ ▪ In its second finding on the motion to dismiss, the circuit court determined that the appellants lacked standing. Appellants' standing to pursue an illegal-exaction claim is governed by Ark. Const. Art. 16, § 13, which states,

> Any citizen of any county, city, or town may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.

Ark. Const. Art. 16, § 13. Two types of illegal-exaction cases can arise under this constitutional provision: "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal. *Pledger v. Featherlite Precast Corp.* 308 Ark. 124, 823 S.W.2d 852 (1992). In this case, the appellants are challenging the use of public funds by the State of Arkansas to fund the Arkansas Board of Collection Agencies, Division

of Check-Cashing, which division licenses and regulates check cashing companies, pursuant to Act 1216 of 1999. The only standing requirements we have imposed in public-funds cases are that the plaintiff be a citizen and that he or she have contributed tax money to the general treasury. *Ghegan v. Ghegan, Inc.* 338 Ark. 9, 991 S.W.2d 536 (1999). Here, the appellants' complaint clearly alleges that all plaintiffs were Arkansas residents and taxpayers. Because these allegations are sufficient to withstand a motion to dismiss for lack of standing, we conclude that the circuit court erred in dismissing the case on this ground.

■ The appellees, nonetheless, assert that the Board's Division of Check-Cashing is financed by fees paid by the licensed collection agencies and check-cashers and does not receive any general revenue from the Arkansas State Treasury. Based on that assertion, they contend that the appellants do not have standing to challenge the expenditure of money. Our decision in *Chapman v. Bevilacqua*, 349 Ark. 262, 42 S.W.3d 378 (2001), is cited as support for the proposition that a taxpayer does not have standing to challenge the disbursement of fees paid by a third party. The appellees also state, "Appellants do not state facts to show that the Appellee receives tax dollars or that the Appellants' tax dollars pay for the operation of the Appellee's Division of Check-Cashing." This statement, however, mischaracterizes the appellants' burden to overcome a motion to dismiss. As stated above, in deciding whether a motion to dismiss a complaint was properly granted, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Hodges v. Lamora, supra.* Here, the complaint clearly alleges the use of public funds, stating, "Since its inception, the Board's Division of Check-Cashing has used public funds to finance its operation." Because we must assume all factual allegations in the complaint are true, this statement in the complaint is sufficient to overcome a motion to dismiss. If the Board had presented affidavits or other evidence establishing that the Division of Check-Cashing did not use public funds to finance its operation, we could have treated the motion to dismiss as one for summary judgment. *Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004). However, no additional evidence on this point was presented. Thus, our review is limited to the allegations in the complaint.

■ We also conclude that the circuit court erred in dismissing the complaint for failure to state facts upon which relief can be granted under Ark. R. Civ. P. 12(b)(6)(2004). The complaint sufficiently states a cause of action for illegal exaction. As we pointed out earlier in this opinion, the misapplication of public funds is one avenue for establishing a claim for illegal exaction. *Pledger v. Featherlite Precast Corp., supra.* Here, the complaint contains the following factual allegations:

- All transactions under the Check-Casher's Act involve interest rates that violate the usury provisions of the Arkansas Constitution.

- Since its inception, the Board's Division of Check-Cashing has used public funds to finance its operations. The Board has employees and equipment and has a budget for its routine expenses.

- At various times since its inception, the Division has presented payday lenders with a table to allow the lenders to calculate the interest amount to charge to consumers. This information is posted on the Defendants' website. According to the posted chart, transactions involve interest rates of at least 168.203% and up to 1,738.443%.

- The Board continues to provide "licenses" to payday lenders.

According to these allegations, the Board was aware that the check-cashers were charging unconstitutionally usurious fees and nevertheless continued to provide licenses to them. Based on these facts alleged in the complaint, the expenditure of public funds to support the Board's Division of Check-Cashing would be a misapplication of public funds; that is, as alleged in the complaint, public funds are being misapplied or illegally spent. We therefore hold that the complaint sufficiently states a cause of action for illegal exaction.

■ The circuit court additionally found that the appellees were immune from suit pursuant to the Arkansas Constitution and state law. According to Ark. Const. Art. 5, § 20, "The State of Arkansas shall never be made a Defendant in any of her Courts." *Id.* While this provision generally prohibits suits against the State or a State agency, we have held that the illegal-exaction clause, as the more specific provision, controls the more general prohibition

against suit provided in art. 5, § 20, and grants taxpayers the right to sue. *Carson v. Weiss*, 333 Ark. 561, 972 S.W.2d 933 (1998). Thus, in view of our holding that the appellants have successfully pled an illegal exaction claim, the doctrine of sovereign immunity is not applicable here.

■ In a fourth rationale for dismissing the complaint, the circuit court found that the appellants had failed to join all interested parties. Rule 19 of the Arkansas Rules of Civil Procedure states,

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter, impair or impede his ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

Ark. R. Civ. P. 19(a) (2004). Appellees argue the trial court properly dismissed the complaint because the appellants failed to name the licensed check-cashers that would be affected by the relief requested in their complaint. However, joinder is only an appropriate remedy when the individuals in question are not parties to the litigation. In an illegal exaction claim, the Arkansas Constitution makes each taxpayer a party to the lawsuit as a matter of law. *Worth v. City of Rogers*, 351 Ark. 183, 89 S.W.3d 875 (2002). A check-casher, as defined in Ark. Code. Ann. § 23-52-102(3), is "a person who for compensation engages, in whole or in part, in the check-cashing business." The status of check-cashers as taxpayers has not been rebutted. Consequently, all licensed check-cashers in Arkansas would be members of the class and parties to the illegal exaction suit.[1] We therefore conclude that the circuit court erred in dismissing the case for failure to join all interested parties.

■ Finally, the appellants argue that the circuit court erred in determining that it could not rule on the appellants' constitu-

---

[1] We need not address whether the check-cashers have a right to intervene in this lawsuit under Ark. R. Civ. P. 24 (2004) because that issue is not before us in this appeal. *Worth v. City of Rogers, supra* (Imber, J., concurring).

tional claim and in failing to grant the appellants' motion for partial summary judgment. In fact, the circuit court simply refused to rule on the motion, deeming it "moot" because it had dismissed the case on other grounds. As the trial court did not issue a ruling on the constitutional claim or the motion for partial summary judgment, we will not address these issues on appeal.

Reversed and Remanded.

CORBIN, J., dissents.

GUNTER, J., not participating.

DONALD L. CORBIN, Justice, dissenting. I dissent because I would affirm the trial court's order dismissing Appellants' class–action lawsuit, on the grounds that (1) they failed to exhaust their administrative remedies under the Arkansas Administrative Procedure Act (AAPA), Ark. Code Ann. §§ 25-15-201 to -218 (Repl. 2002 & Supp. 2003), and (2) they failed to state facts demonstrating their standing as taxpayers to bring this suit.

At the heart of this case is Appellants' claim that the Arkansas Check-Cashers Act, Ark. Code Ann. §§ 23-52-101 to -117 (Repl. 2000 & Supp. 2003), is unconstitutional. They seek both a declaratory judgment and a refund of monies that they claim have been illegally exacted under the Act. I believe that their suit is premature, because Appellants failed to pursue the constitutional issue before Appellee State Board of Collection Agencies.

As the majority states, some of the named Appellants in this case had previously brought a claim before the Board, seeking the release of surety bonds to fulfill a judgment they had won in the Craighead County Circuit Court against payday lender AAA Check Cashing, Inc. The named class representative in that case is Appellant Sharon McGhee. Appellants Roberto Salas and Henry Evans were also members of that class. According to the complaint filed in this case, Appellants at some point had "implored the Board to cease licensing and assisting payday lenders" in this state. Undeniably, the reason for their request was Appellants' belief that the Act under which the Board functioned was unconstitutional. For whatever reason, however, they did not seek a ruling from the Board regarding the constitutionality of the Act. I believe they were required to do so before seeking relief from our state courts.

This court has repeatedly held that a litigant must exhaust his or her administrative remedies before instituting litigation to challenge the action of an administrative agency, except where it

would be futile or where there was no genuine opportunity to do so. *See, e.g., Ford v. Arkansas Game & Fish Comm'n*, 335 Ark. 245, 979 S.W.2d 897 (1998); *Cummings v. Big Mac Mobile Homes, Inc.*, 335 Ark. 216, 980 S.W.2d 550 (1998); *Regional Care Facilities, Inc. v. Rose Care, Inc.*, 322 Ark. 780, 912 S.W.2d 406 (1995). The doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed statutory administrative remedy has been exhausted. *Arkansas Prof'l Bail Bondsman Lic. Bd. v. Frawley*, 350 Ark. 444, 88 S.W.3d 418 (2002); *Cummings*, 335 Ark. 216, 980 S.W.2d 550. A basic rule of administrative procedure requires that an agency be given the opportunity to address a question before a complainant resorts to the courts. *Id.* The failure to exhaust administrative remedies is grounds for dismissal. *Douglas v. City of Cabot*, 347 Ark. 1, 59 S.W.3d 430 (2001); *Romine v. Arkansas Dep't of Envtl. Quality*, 342 Ark. 380, 40 S.W.3d 731 (2000). This is true even for constitutional issues. *See id.* (affirming the dismissal of the appellants' suit based on their repeated failure to respond to and raise their constitutional arguments at the administrative level).

This court has applied the doctrine of exhaustion of administrative remedies to declaratory-judgment actions filed under section 25-15-207 of the AAPA. For example, in *Ford*, 335 Ark. 245, 979 S.W.2d 897, this court affirmed the trial court's dismissal of the appellant's declaratory-judgment suit on the ground that he had not exhausted his administrative remedies. This court stated: "Instead of filing a declaratory-judgment action, Ford should have raised his constitutional arguments before the Commission, and then appealed the Commission's final ruling to the circuit court pursuant to Ark. Code Ann. § 25-15-212 (Repl. 1996)." *Id.* at 251-52, 979 S.W.2d at 900.

Similarly, in *Rehab Hosp. Servs. Corp. v. Delta-Hills Health Sys. Agency, Inc.*, 285 Ark. 397, 687 S.W.2d 840 (1985), this court held:

> Declaratory judgment actions are intended to supplement rather than replace ordinary causes of action. *Mid-State Const. Co. v. Means*, 245 Ark. 691, 434 S.W.2d 292 (1968). As such, the parties are required to exhaust administrative remedies prior to seeking a declaratory judgment.
>
> It seems to be now a recognized doctrine that requires administrative relief to be sought before resorting to declaratory procedure, wherever administrative relief is afforded and this requirement is not one merely requiring the initiation of

administrative procedure, *but the administrative procedure must be pursued to its final conclusion before resort may be had to the court for declaratory relief.*

W. Anderson, *Actions for Declaratory Judgments*, 204, at 433 (1951). This court likewise requires exhaustion of administrative remedies before resorting to an action for declaratory judgment. *See Ragon v. Great American Indemnity Co.*, 224 Ark. 387, 273 S.W.2d 524 (1954).

*Id.* at 399, 687 S.W.2d at 841-42. *See also Regional Care Facilities*, 322 Ark. 780, 912 S.W.2d 406.

More recently, in *AT&T Communications of the Southwest, Inc. v. Arkansas Pub. Serv. Comm'n*, 344 Ark. 188, 40 S.W.3d 273 (2001), this court held that even though a state agency lacks authority to declare unconstitutional a state statute that it is charged with enforcing, the constitutional challenge should nonetheless be brought before that agency prior to resorting to the courts. This court explained:

Our court has addressed the question of whether an administrative agency has the authority to *declare* a statute unconstitutional. In *Lincoln v. Arkansas Public Service Commission*, 313 Ark. 295, 854 S.W.2d 330 (1993), we held that to allow the Public Service Commission to declare unconstitutional a statute that it was required to enforce would violate the separation of powers doctrine. However, this does not mean that a constitutional issue should not be *raised and developed* at the administrative level.

*Id.* at 196, 40 S.W.3d at 279. This court reasoned: "Raising such constitutional issues before the Commission is significant even when a statute is challenged as unconstitutional on its face, *especially since the interpretation given by the agency charged with its execution is highly persuasive." Id.* at 198, 40 S.W.3d at 280 (citing *Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*, 69 Ark. App. 323, 13 S.W.3d 197 (2000) (emphasis added)).

The foregoing cases are illustrative of this court's consistent practice of giving an agency first crack at interpreting the statutes and rules that it is charged with executing and enforcing. In doing so, this court has recognized that the agency is often in a better position of making a ruling, through its specialized knowledge and experience. Thus, even though the agency's ruling on the consti-

tutionality of a state statute is not binding on the courts of this state, it is undeniably valuable. It is because of this value that a litigant is required to exhaust any and every available remedy from the agency itself before resorting to the courts.

In the present case, it is undisputed that some of the named Appellants in this case were already involved in a pending action before the Board at the time that this action was filed in circuit court and that the Board had not yet rendered its decision before Appellants brought this suit. The majority holds that Appellants' suit is not barred by their failure to exhaust administrative remedies, because neither the issues nor the parties involved in the present suit are identical to those in the action before the Board. In my opinion, this holding ignores the fact that even if a similar proceeding were not already pending before the Board, Appellants were required to bring their constitutional challenge to the Board before resorting to the courts. The foregoing cases demonstrate that the doctrine of exhaustion of administrative remedies not only requires parties to *follow through* on matters already before the agency, it also requires them to *institute* such proceedings in the first place. Thus, regardless of whether the issues and the parties in the pending action before the Board were the same as those in the present suit, Appellants were required to seek a ruling on their statutory challenge from the Board before they filed suit in the circuit court.

Moreover, it matters not that the Board lacks the authority to actually strike down the Check-Cashers Act as unconstitutional. Under this court's holding in *AT&T*, 344 Ark. 188, 40 S.W.3d 273, Appellants were nonetheless required to raise and develop their constitutional challenge before the Board. Likewise, it is irrelevant that the Board has no jurisdiction to hear and determine an illegal-exaction claim. The heart of this claim is the constitutionality of the Act. Thus, even though the Board could not order a refund of any monies illegally exacted, it clearly has the authority to rule on the constitutional issue. I therefore disagree with Appellants that requiring them to exhaust their remedies before the Board would have been a futile act.

The majority posits that I would require every taxpayer who files an illegal-exaction suit involving a state agency to first bring that claim to the agency before filing suit in circuit court. My position is not so broad. However, based on the particular circumstances of this case, where the Appellants are seeking a declaratory judgment along with a refund of public monies, and where some of

these Appellants, including the named representative, were already before the Board on a related issue, and where the crux of both the illegal-exaction and the declaratory-judgment claims is the constitutionality of the Board's actions, the Appellants were required to exhaust their administrative remedies before resorting to the courts.

Moreover, I find it significant that this illegal-exaction claim was not pursued until the Board's AHO denied Appellants' request to release the surety bonds for one of the payday lenders. Appellants had sought those surety bonds to satisfy part of the judgment granted to them against the payday lender. Thus, in my mind, the illegal-exaction claim appears to be an afterthought aimed at getting the state and the taxpayers to satisfy their judgment against the true wrongdoer. Under these unique circumstances, I would require the Appellants to first bring their claim of the unconstitutionality of the Board's actions before the Board.

The majority also notes that this court has not heretofore applied the doctrine of exhaustion of administrative remedies to illegal-exaction claims involving a state agency. I do not disagree with this observation. However, I submit that the reason that this doctrine has not been so applied is because the issue has never been squarely before us, as it is in this case. I do not view the omission of this issue in the four cases cited by the majority as indicative of this court's prior rejection of this doctrine in illegal-exaction cases. Because I believe it is applicable in this case, I would affirm the trial court's order of dismissal.

I would also affirm the trial court's dismissal on the ground that Appellants failed to demonstrate that they have standing to pursue this matter as an illegal exaction. Particularly, they have failed to demonstrate that public funds are at issue.

This court has previously identified two types of illegal-exaction cases. *See, e.g., Chapman v. Bevilacqua*, 344 Ark. 262, 42 S.W.3d 378 (2001); *Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999). The type at issue in this case is the "public funds" type, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent. *Id.* This court has explained that citizens have standing to bring a "public funds" case because they have a vested interest in ensuring that the tax money they have contributed to the state treasury is lawfully spent. *Id.* This court has stated that "a misapplication by a public official of funds arising from taxation constitutes an exac-

tion from the tax payers and empowers any citizen to maintain a suit to prevent such misapplication of funds." *Farrell v. Oliver*, 146 Ark. 599, 602, 226 S.W. 529, 530 (1921). *See also Arkansas Assoc. of County Judges v. Green*, 232 Ark. 438, 338 S.W.2d 672 (1960); *Ward v. Farrell*, 221 Ark. 363, 253 S.W.2d 353 (1952); *Samples v. Grady*, 207 Ark. 724, 182 S.W.2d 875(1944).

In the present case, Appellants assert that the Board is misusing public funds. They state in their complaint that "as victims of payday loan transactions and as Arkansas taxpayers," they are "entitled to a judgment against the [Board and its members] for the amount of public funds that have been diverted for the improper purpose of 'licensing' and 'regulating' payday lenders." The problem with this assertion is that Appellants have not pled any facts to show that the funds used for the allegedly improper purpose of licensing and regulating the payday lenders were the result of taxpayer monies. Rather, their complaint merely contains the conclusory statements that the Board "is a public entity," which "has used public funds to finance its operations," and which has "employees and equipment and has a budget for its routine expenses." They also state that the legislature has "continued to appropriate public funds to finance the Board's Division of Check Cashing."

The State, on the other hand, asserts that the Board, although a state agency, does not expend public tax monies; rather, the Board is funded by the fees paid by the licensees — the payday lenders. The State asserts further that the fees paid to the Board are not placed in the state's treasury and are not part of the state's general revenue. Thus, the State argues that the taxpayers are not the source of the funds and that, accordingly, Appellants' status as taxpayers is irrelevant because public monies are not at stake. I believe that the State's point is well taken.

It is axiomatic that before a public-funds type of illegal exaction will be allowed to proceed, there must be facts showing that monies generated from tax dollars or arising from taxation are at stake. The statements contained in this complaint, *i.e.*, that the Board is a public entity that has used public funds and that the legislature has continued to appropriate funds for the Board, are bare-bones allegations. Arkansas is a fact-pleading state. *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004); *Travelers Cas. & Sur. Co. v. Arkansas State Highway Comm'n*, 353 Ark. 721, 120 S.W.3d 50 (2003). Thus, a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.*

Moreover, even if this court were to view these allegations as facts, they are still insufficient. It is not enough for Appellants to state that the Board receives or uses public funds or that the legislature has authorized it to spend public funds. Rather, to prove their unique illegal-exaction claim, they must show that the particular funds used to license and regulate the payday lenders are public funds. There are simply no facts in their complaint to support this claim or to counter the State's assertion that the funds used to license and regulate these lenders are gained solely from the fees charged to lenders themselves.

The bottom line is that as the plaintiffs in this case, it was incumbent upon Appellants to demonstrate their standing to bring this illegal-exaction claim. Under this court's long line of cases, this requires a showing that the alleged misused funds are generated from tax dollars or otherwise arise from taxation. Because Appellants failed to make such a showing, the trial court was correct to grant the State's motion to dismiss the illegal-exaction claim on the ground that Appellants lacked standing to pursue such a claim. Accordingly, I dissent.