Sharon McGHEE, Sydney McGhee, Roberto·Salas, Charles Stewart,
Henry Evans, Craig Savell, Patrick Henry Hayes, Individually,
and on Behalf of a Class of Similarly Situated Persons  *v.*
ARKANSAS STATE BOARD of COLLECTION AGENCIES
and Rusty Guinn, Jerry Markham, Randy Bynum, Opal Lang, and
Gary Frala, in Their Official Capacities as Board Members of the
Arkansas State Board of Collection Agencies;  Arkansas Financial
Services Association, Intervenor

06–381                                             243 S.W.3d 278

Supreme Court of Arkansas
Opinion delivered November 16, 2006

*Todd Turner* and *Dan Turner; Orr, Scholtens, Willhite & Averitt, PLC,* by: *Chris Averitt,* for appellants.

*Thrash Law Firm,* by: *Thomas P. Thrash; Mike Beebe,* Att'y Gen., by: *Arnold Jochums,* Ass't Att'y Gen., for appellee.

*Rose Law Firm, A Professional Association,* by: *John T. Hardin,* for intervenor Arkansas Financial Services Association.

*Deborah M. Zuckerman,* AARP Foundation, *Jim Jackson,* counsel of record, *amicus curiae* of AARP in support of appellants.

DONALD L. CORBIN, Justice. This is the second appeal of a case alleging an illegal exaction under article 16, section 13, of the Arkansas Constitution and challenging the constitutionality of the Arkansas Check-Cashers Act, codified at Ark. Code Ann. §§ 23-52-101 to -117 (Repl. 2000 & Supp. 2003). In the present appeal, Appellants Sharon McGhee, and other members of the class alleging an illegal exaction (collectively referred to as McGhee), argue that the trial court erred in finding that (1) no public funds were used by Appellees, the Arkansas State Board of Collection Agencies and its members (collectively referred to as the Board), in licensing and regulating companies operating under the Check-Cashers Act; and

(2) the Check-Cashers Act is constitutional. As this is a second appeal, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(7).

It is not necessary to go into an in-depth recitation of the underlying facts of this case, as they are set out in *McGhee v. Arkansas State Board of Collection Agencies*, 360 Ark. 363, 201 S.W.3d 375 (2005) (*McGhee I*). Suffice it to say, McGhee filed an action in circuit court alleging that the Board's use of public funds to license and regulate payday lenders constituted an illegal exaction. In addition to seeking relief for the illegal exaction, McGhee also sought a declaration that the Check-Cashers Act was unconstitutional. The circuit court dismissed her illegal-exaction claim and refused to address her constitutional argument.

On appeal, this court reversed and remanded, holding that the trial court erred in concluding that McGhee was required to exhaust administrative remedies before seeking redress in circuit court. We pointed out that the administrative action that was pending before the Board involved different parties and a different cause of action and, as such, McGhee was not barred from filing a new and separate cause of action for illegal exaction. Additionally, this court held that the trial court erred in determining that: (1) McGhee lacked standing to pursue an illegal-exaction claim; (2) the Board was immune from suit; (3) McGhee had failed to join all necessary parties pursuant to Ark. R. Civ. P. 19. *Id.* Finally, this court also refused to address the constitutional claim, noting that the trial court had not ruled on that issue and instead simply determined that the issue was moot because of the dismissal of the case on other grounds.

Upon remand, Arkansas Financial Services Association (AFSA) sought to intervene and request a declaration that the Check-Cashers Act was constitutional. In an order dated April 5, 2005, the trial court granted AFSA's motion to intervene, and AFSA subsequently filed an answer, a motion to dismiss pursuant to Ark. R. Civ. P. 12(b)(6), and a cross-claim. The next day, Arkansas Federal Credit Union (AFCU) filed a motion, also seeking to intervene in the case. AFCU was allowed to intervene by order entered May 6, 2005, and subsequently filed a petition for writ of mandamus to prohibit the Board from "licensing any business engaging in payday lending."[1]

---

[1] Prior to the hearing in this matter, AFCU voluntarily withdrew its petition for mandamus.

On June 10, 2005, McGhee filed a motion for partial summary judgment, arguing that summary judgment was warranted on the basis that she had standing to pursue the claim for illegal exaction. Additionally, McGhee incorporated, by reference, her previous motion for partial summary judgment as to her constitutional claim, noting that the trial court failed to rule on it, prior to entering its order of dismissal.

On September 21, 2005, the Board filed a motion for summary judgment, arguing that McGhee could not establish that the Check-Cashers Act was in any way unconstitutional, nor could she show that any public funds were used by the Board to regulate and license businesses under the Act. Submitted in connection with the motion for summary judgment was an affidavit from Peggy Matson, Executive Director of the Board, wherein she averred that the Division of Check-Cashing Operations was "funded exclusively from fees and fines charged to businesses providing check cashing services." AFSA filed a motion requesting that its previous motion to dismiss be considered a motion for summary judgment, arguing that summary judgment was warranted because McGhee had no standing to seek a declaratory judgment or a claim for illegal exaction.

A hearing was held on November 22, 2005. McGhee argued that the Check-Cashers Act violated article 19, section 13, of the Arkansas Constitution, and that once such a determination was made, the court should then address the issue of whether public funds were used by the Board in licensing and registering businesses under the Act. The Board argued to the contrary that McGhee first had to establish that she had standing to bring the illegal-exaction claim before determining the issue of the Act's constitutionality. The Board further argued that the entire case hinged on the issue of whether the Board used public funds, and because the undisputed evidence indicated that public funds were not used, summary judgment was warranted.

At the conclusion of the hearing, the trial court stated from the bench that there were no taxpayers' funds at issue in this case. With regard to the constitutional question, the court further stated that "the statute is constitutional as it is written and that the Plaintiffs must go through the administrative process." A written order was entered on December 15, 2005, wherein the trial court reiterated its oral ruling that no taxpayers' funds were at issue and,

thus, McGhee had no valid illegal-exaction claim, thereby requiring dismissal with prejudice of that claim.[2] The written order also stated that:

> To the extent Plaintiffs' declaratory judgment claim is unrelated to Plaintiffs' illegal exaction claim, the declaratory judgment claim was dismissed on December 8, 2003 without prejudice, because this court lacked jurisdiction to hear this case because Plaintiffs have failed to exhaust their administrative remedies.

> (3) Plaintiffs do not allege any individual claims or causes of action outside of the declaratory judgment claim requesting this Court to declare the entire Check-cashers Act unconstitutional. Plaintiffs do not allege and have not submitted any evidence that they have exhausted their administrative remedies. Therefore, this Court lacks jurisdiction to hear the Plaintiffs' declaratory judgment claim because they have failed to exhaust their administrative remedies.

McGhee subsequently filed a motion for reconsideration or clarification, requesting that the trial court enter a written order that conformed with the statement from the bench that the Check-Cashers Act was constitutional. The motion was denied, and McGhee lodged the instant appeal.

### Claim for Illegal Exaction

We begin our review of the instant appeal by considering the merits of McGhee's second point on appeal that the trial court erred in determining that there was no illegal-exaction claim based on a misuse of public funds. In essence, McGhee is arguing that public funds are at issue because the companies regulated by the Board are taxpayers and pay monies to the Board; thus, the funds they pay to the Board in the form of license fees are "funds received from taxpayers" that subsequently become public funds. Additionally, McGhee argues that there are at least two full-time employees of the Board, who just like other state employees,

---

[2] The trial court also stated in this order that the portion of the declaratory-judgment claim related to the illegal-exaction claim was also dismissed because of the finding that the Board did not use public funds. The order also reflected that Appellants' motion for partial summary judgment was denied, while Appellees' and Intervenor's motions for summary judgment were granted in part.

receive salaries and benefits. The Board counters that it presented unrefuted evidence that funds generated from tax dollars or otherwise arising from taxation are not used to fund the Board in any manner. AFSA also argues that summary judgment as to the illegal-exaction claim was warranted.

A trial court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated, and that the party is entitled to judgment as a matter of law. *Mitchell v. Lincoln*, 366 Ark. 592, 237 S.W.3d 455 (2006); *Harris v. City of Fort Smith*, 359 Ark. 355, 197 S.W.3d 461 (2004). Once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Young v. Gastro-Intestinal Ctr.*, 361 Ark. 209, 205 S.W.3d 741 (2005). On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *City of Farmington v. Smith*, 366 Ark. 473, 237 S.W.3d 1 (2006).

As recognized in *McGhee I*, 360 Ark. 363, 201 S.W.3d 375, we are dealing with a public-funds type of illegal exaction. This court has explained that citizens have standing to bring a "public funds" case because they have a vested interest in ensuring that the tax money they have contributed to the state treasury is lawfully spent. *Chapman v. Bevilacqua*, 344 Ark. 262, 42 S.W.3d 378 (2001); *Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999). This court has stated that "a misapplication by a public official of funds arising from taxation constitutes an exaction from the tax payers and empowers any citizen to maintain a suit to prevent such misapplication of funds." *Farrell v. Oliver*, 146 Ark. 599, 602, 226 S.W. 529, 530 (1921). *See also Ark. Ass'n of County Judges v. Green*, 232 Ark. 438, 338 S.W.2d 672 (1960); *Ward v. Farrell*, 221 Ark. 363, 253 S.W.2d 353 (1952); *Samples v. Grady*, 207 Ark. 724, 182 S.W.2d 875 (1944).

The question now before us is whether the trial court properly granted summary judgment in favor of the Board and AFSA on the basis that no public funds were used by the Board. Competing motions for summary judgment were filed. Attached to the Board's motion was the affidavit by Ms. Matson, Executive Director of the Board. In her affidavit, Ms. Matson averred that the

Board does not receive any revenue from state treasuries, has not used any public funds to finance its operations, and the funds used by the Board are in no way generated from tax dollars or monies arising out of taxation. Moreover, in a supplemental affidavit, Ms. Matson averred that the employees of the Board are paid by the Board and that no tax revenue is used to pay for employee benefits. McGhee presented no evidence to the contrary.

In recognizing the shifting burden in summary-judgment motions, this court has stated that once the moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the motion's opponent cannot rely on a bare denial or contrary allegation but must meet proof with proof and demonstrate the existence of a material issue of fact. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). Here, the Board established its entitlement to summary judgment through the affidavits of Ms. Matson. The burden then shifted to McGhee to refute that evidence, and she failed to do so. Accordingly, we cannot say the trial court erred in granting summary judgment in favor of the Board and AFSA as to McGhee's claim for illegal exaction.

### Claim for Declaratory Judgment

McGhee also argues that the trial court erred in denying her motion for declaratory relief and holding the Check-Cashers Act constitutional. The Board argues that the trial court did not rule on the claim for declaratory judgment and, thus, it would be inappropriate for this court to review the issue. According to the Board, the only issue that this court may properly consider at this juncture is whether or not the trial court erred in determining that it did not have jurisdiction to consider the constitutional claim because of McGhee's failure to exhaust her administrative remedies. AFSA also argues that the constitutional question is not properly before this court. Additionally, AFSA argues that in the absence of a valid illegal-exaction claim, it was proper for the trial court to dismiss McGhee's claim for declaratory judgment. Specifically, AFSA argues that McGhee was required to preserve such a claim in *McGhee I*, 360 Ark. 363, 201 S.W.3d 375, and her failure to distinguish the stand-alone claim for declaratory judgment rendered the trial court's dismissal on December 8, 2003, law of the case.

As a threshold issue, this court must determine whether the trial court in fact ruled on McGhee's constitutional challenge. It is

apparent from the record that no such ruling can be found in the written order. McGhee argues, however, that this court should go ahead and address the issue based on the trial court's announcement from the bench that the Act was constitutional. We decline to do so.

■ Pursuant to Administrative Order 2(b)(2), an oral order announced from the bench does not become effective until reduced to writing and filed. *Judkins v. Hoover*, 351 Ark. 552, 95 S.W.3d 768 (2003), *overruled on other grounds, West v. Williams*, 355 Ark. 148, 133 S.W.3d 388 (2003). This rule eliminates or reduces disputes between litigants over what a trial court's oral decision in open court entailed. *See Price v. Price*, 341 Ark. 311, 16 S.W.3d 248 (2000). If a trial court's ruling from the bench is not reduced to writing and filed of record, it is free to alter its decision upon further consideration of the matter. *See Morrell v. Morrell*, 48 Ark. App. 54, 889 S.W.2d 772 (1994). Simply put, the written order controls. Accordingly, the Board and AFSA are correct that this court is limited to a review of whether the trial court properly declined to address the merits of the constitutional challenge because of McGhee's failure to exhaust her administrative remedies.

The doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed statutory administrative remedy has been exhausted. *Old Republic Sur. Co. v. McGhee*, 360 Ark. 562, 203 S.W.3d 94 (2005); *Ark. Prof'l Bail Bondsman Licensing Bd. v. Frawley*, 350 Ark. 444, 88 S.W.3d 418 (2002); *Cummings v. Big Mac Mobile Homes, Inc.*, 335 Ark. 216, 980 S.W.2d 550 (1998). A basic rule of administrative procedure requires that an agency be given the opportunity to address a question before a complainant resorts to the courts. *Id.* The failure to exhaust administrative remedies is grounds for dismissal. *Douglas v. City of Cabot*, 347 Ark. 1, 59 S.W.3d 430 (2001); *Romine v. Ark. Dep't of Envtl. Quality*, 342 Ark. 380, 40 S.W.3d 731 (2000).

Moreover, as argued by the Board and AFSA, the doctrine of exhaustion of administrative remedies has been applied even to constitutional challenges. In *AT&T Communications of the Southwest, Inc. v. Arkansas Public Service Commission*, 344 Ark. 188, 40 S.W.3d 273 (2001), this court held that even though a state agency lacked authority to declare unconstitutional a state statute that it was

charged with enforcing, the constitutional challenge should have nonetheless been developed before that agency. This court explained:

> Our court has addressed the question of whether an administrative agency has the authority to *declare* a statute unconstitutional. In *Lincoln v. Arkansas Public Service Commission*, 313 Ark. 295, 854 S.W.2d 330 (1993), we held that to allow the Public Service Commission to declare unconstitutional a statute that it was required to enforce would violate the separation of powers doctrine. However, this does not mean that a constitutional issue should not be *raised and developed* at the administrative level.

*Id.* at 196, 40 S.W.3d at 279. This court further reasoned: "Raising such constitutional issues before the Commission is significant even when a statute is challenged as unconstitutional on its face, especially since the interpretation given by the agency charged with its execution is highly persuasive." *Id.* at 198, 40 S.W.3d at 280 (citing *Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*, 69 Ark. App. 323, 13 S.W.3d 197 (2000)).

In *McGhee I*, 360 Ark. 363, 201 S.W.3d 375, this court acknowledged the doctrine of exhaustion of administrative remedies and the cases applying it, but concluded that it was inapplicable. In reaching this conclusion, the court noted that while McGhee had a pending action before the Board regarding the release of surety bonds, that action was a different action, involving different parties and, thus, McGhee was not prohibited from filing an entirely new cause of action in circuit court.

In the instant action, we likewise hold that McGhee was not required to first seek a declaration regarding the constitutionality of the Check-Cashers Act before the Board. Despite the Board's reliance on *Old Republic*, 360 Ark. 562, 203 S.W.3d 94, and *AT&T*, 344 Ark. 188, 40 S.W.3d 273, the exhaustion of administrative remedies is simply not applicable in the instant case. McGhee had no pending action before the Board that required her to also raise her constitutional challenge; therefore, she was not prohibited from filing her action for declaratory judgment in circuit court.

In *Lincoln*, 313 Ark. 295, 854 S.W.2d 330, this court opined that to allow the Public Service Commission to declare unconstitutional a statute that it was required to enforce would violate the doctrine of the separation of powers. This court held that the Commission's refusal of jurisdiction over the issue of whether a statute unconstitutionally infringed on the Arkansas Constitution

did not deny the appellant a remedy because he could challenge the constitutionality of the statute in a declaratory-judgment action filed in circuit court. That holding has never been abandoned or otherwise overruled. Our later cases, including the ones now relied upon by the Board, simply elaborated and explained that in situations where a party institutes an action before an administrative agency, they must also raise and develop any constitutional arguments they wish to pursue. *See Ford v. Arkansas Game & Fish Comm'n*, 335 Ark. 245, 979 S.W.2d 897 (1998); *Regional Care Facilities, Inc. v. Rose Care, Inc.*, 322 Ark. 780, 912 S.W.2d 406 (1995).

■ Here, the heart of Appellants' complaint is that they are being injured by the regulations set forth in the Check-Cashers Act due to the fact that the Board continues to license and regulate payday lenders under this Act, thereby allowing them to charge usurious interest rates in violation of article 19, section 13. Thus, Appellants properly sought a declaration in circuit court that the Check-Cashers Act was unconstitutional. Accordingly, we reverse and remand this matter to the circuit court.

Affirmed in part; reversed and remanded in part.