Linda CHAPMAN *v.* Elnora BEVILACQUA, *et al.*

00-1318                                              42 S.W.3d 378

Supreme Court of Arkansas
Opinion delivered March 22, 2001

*Oscar Stilley*, for appellant.

*Daily & Woods, P.L.L.C.,* by: *Jerry L. Canfield,* for appellee/ intervenor.

JIM HANNAH, Justice. Appellant Linda Chapman appeals the trial court's grant of summary judgment to Appellees Elnora Bevilacqua and thirty-one other defendants and the Intervenor City of Fort Smith ("the City") regarding whether the City's disbursement of funds through a housing rehabilitation program violates the Arkansas Constitution as an illegal exaction of the City's general fund. We affirm.

*Facts*

In the fiscal years 1997 and 1998, the City received from the federal government Community Development Block Grants and Home funds for the rehabilitation of urban dwellings owned by qualifying individuals who applied for the grants. The City, as the implementing agency, carried out the housing rehabilitation programs pursuant to federal and state laws allowing municipalities, counties, or established housing authorities to redevelop urban or rural areas suffering from unsafe, unsanitary, or blighted conditions, as determined by federal guidelines. Under the program, when grant money was used, the property was subject to a recorded guarantee that the rehabilitated housing unit would be used for income-eligible occupants for five years.

Under the plan, the City conducted the disbursement of federal funds so that none of the money involved would be paid directly to the homeowner or to the repair contractor, whose names were both included on the grant checks, so that the beneficiary of the funds would be the dwelling itself and, thus, the community, guaranteeing that the repairs and renovations were made. The procedure for payment required the bid-chosen repair contractor to submit a claim for repayment to the program supervisor with the City, who was paid by federal money to administer the plan. The program supervisor would then process the payment request through the City's finance department, whose employees were paid by the City. The finance department would then request a drawdown of funds from the United States Department of Housing and Urban Development. The money was then wired to the dedicated accounts, and checks were issued to the repair contractor and homeowner jointly.

On November 5, 1999, Chapman filed suit against thirty-two private property owners in the City, seeking to recover from these defendants the value of repairs or rehabilitations of their private property, which had been accomplished in 1997 and 1998 through these federally funded housing programs. Specifically, Chapman alleged that she, as a taxpayer, sought to recover for the City the monies paid to the defendants for rehabilitation of their homes because the money had been unlawfully expended from the Sebastian County Treasury and the City's general fund. Furthermore, Chapman alleged that the defendants were required to replenish the City's general fund when it was exhausted by misappropriation under Arkansas Constitution Art. 12, § 5. Finally, Chapman alleged that "The acts and omissions set forth in this complaint constitute an illegal exaction in the amount of the grants received by each of the Defendants, for which the named Defendants should be required to repay all money which they have received as grants from the City of Fort Smith, Arkansas." Chapman also alleged that the grants constituted an unjust enrichment to each defendant.

The separate defendants filed answers to the complaint within the required time. Some defendants joined together to hire attorneys, while others proceeded individually. On November 15, 1999, the City moved to intervene and, without objection, the court granted the motion on November 22, 1999. The City then filed its answer to Chapman's complaint on December 1, 1999. Over the next several months, the parties exchanged interrogatories and requests for production of documents, with the City spearheading the bulk of discovery. On April 7, 2000, the City filed a motion for summary judgment, attaching as exhibits the testimony from a deposition and three affidavits of City employees who were familiar with the City's implementation of the housing rehabilitation programs. The separate defendants each adopted and joined in the City's motion for summary judgment.

On June 8, 2000, Chapman took the depositions of city employees Garland Bray, Cheryl Turrentine, Matt Jennings, Jackie Joyce, and Jack Baldwin regarding the administration by the City of the housing rehabilitation project. Chapman then responded to the City's motion for summary judgment and filed a cross-motion for summary judgment on June 20, 2000. Thereafter, the City filed a response to Chapman's cross-motion for summary judgment on July 14, 2000, and several of the other defendants either filed additional responses or joined in the City's response.

In its motion for summary judgment, the City first argued that Chapman did not have standing to challenge the administration by the City of the housing rehabilitation project and the distribution of the federal money because she has not personally suffered injury, nor did she belong to a class of people, who had suffered injury or been prejudiced by the distribution of the federal money. The City noted that Chapman had never applied for any rehabilitation funds, nor did she personally know of anyone who had applied who had been turned down. The City argues that Chapman mistakenly believed that the city general funds were being paid to the rehabilitation recipients and that the city general funds were funding the administration of the program. The City averred that at times some City-paid employees performed *de minimis* work on the project, but the salaries of the administration staff was actually paid by the federal funds. Under this allegation of an illegal exaction, the City also noted that for Chapman to have standing, the money expended would have to be state or municipal money. However, because it is federal money, Chapman's lawsuit rightfully belonged in federal court. On its second argument, the City argued that in 1997 and 1998 (the challenged years), the housing rehabilitation program was not operated in violation of Article 12, § 5, of the Arkansas Constitution, thus making any expenditure legal. The City argued that federal statutes provide for such rehabilitation programs, and that the City's compliance with these statutes renders the program legal.

In response and on cross-motion for summary judgment, Chapman argued that because the City pays out certain monies from a dedicated account, which is later reimbursed dollar-for-dollar with federal money, such is an expenditure in violation of Article 12, § 5, of the Arkansas Constitution and an illegal exaction. Therefore, because taxpayer money is being used to fund these projects, Chapman has standing in state court. Chapman next argued that the City's housing program violated the Arkansas Constitution because the expended funds actually go to benefit the homeowners, and general funds were used to pay the salaries of those who work for the housing project. In addition, all housing program employees were paid out of the general fund, although that money is reimbursed by the federal government to fund the administration of the project. Overall, Chapman argued that while the purported beneficiaries under these federal and state housing programs are the citizens, because such improvements remedy urban blight, the actual beneficiaries were the homeowners who benefited from the federal grants from taxpayer dollars.

On August 7, 2000, the court filed its opinion and order dismissing Chapman's complaint with prejudice, finding that Chapman had no standing to challenge the housing program because federal money paid the cost of the program, and the lawsuit should have been filed in federal court. The court further found that the City and the separate defendants did not violate Article 12, § 5, of the Arkansas Constitution because the City did not "obtain or appropriate money for any individual." Chapman filed her notice of appeal on August 21, 2000.

## Standard of Review

■■ This appeal is before the court pursuant to Ark. Sup. Ct. R. 1-2(a)(1) as an appeal involving the interpretation or construction of the Constitution of Arkansas. The parties filed opposing motions for summary judgment and thus, in essence, agreed that there are no material facts remaining. *McCutchen v. Patton*, 340 Ark. 371, 10 S.W.3d 439 (2000). Summary judgment, therefore, was an entirely appropriate means for resolution of this case. As we have often stated, summary judgment is to be granted by a trial court if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56; *Estate of Donley v. Pace Indus.*, 336 Ark. 101, 984 S.W.2d 421 (1999); *Mashburn v. Meeker Sharkey Financial Group, Inc.*, 339 Ark. 411, 5 S.W.3d 469 (1999). Once the moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the motion's opponent cannot rely on a bare denial or contrary allegation but must meet proof with proof and demonstrate the existence of a material issue of fact. *Flentje v. First National Bank Of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000); *Rankin v. City*, 337 Ark. 599, 990 S.W.2d 535 (1999); *George v. Jefferson Hospital Assoc.*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997).

■ The City and Chapman filed opposing motions for summary judgment, and while Chapman apparently argues in her appeal that there may actually have been a genuine issue of material fact remaining, her representation that no issues remained is binding. *McCutchen, supra.* Certainly, had Chapman believed that there were genuine issues of material fact remaining, she could have merely opposed the City's motion for summary judgment, arguing

that there was a genuine issue of material fact, instead of filing a cross-motion for summary judgment.

## Chapman's Standing to Sue

In its first finding on summary judgment, the trial court determined that Chapman did not have standing to bring this lawsuit because her position as a federal taxpayer does not give her the ability to challenge the City's housing program, and the affidavits and deposition testimony only indicated that a *de minimis* amount of the City's general funds were spent on salaries for city employees who were administering the program. Chapman argues on appeal that the trial court erred in ruling that an expenditure of federal funds is not subject to challenge in state court, and that the testimony from employee Jackie Joyce, in particular, reveals that the City's general fund money was being used to some extent to help administer the housing program. The City counters by arguing that this is a challenge to the constitutionality of a statute, as opposed to an illegal-exaction lawsuit, which means that the standing requirements to challenge constitutional provisions are at issue instead of the standing requirements for an illegal-exaction lawsuit. As such, because Chapman was not harmed by the expenditures of federal funds, she has no standing. Furthermore, the City argues that this lawsuit is proper only in federal court because it deals with federal expenditures.

Chapman challenges both the expenditure of federal funds processed through the City's general fund, as well as the use of the City's general fund money to pay a *de minimis* portion of some city employees' salaries to administer the program. Therefore, this court must consider the threshold issue of standing under both allegations before reaching the merits.

■ ■ This court discussed the threshold issue of standing in *Ghegan v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999), where the court stated:

Article 16, Section 13, of the Arkansas Constitution provides that:

Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.

This constitutional provision is self-executing and requires no enabling act or supplemental legislation to make its provisions effective. *Hartwick v. Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989).

When construing a provision of the Arkansas Constitution, we have said that when the language of the provision is plain and unambiguous, each word must be given its obvious and common meaning, and neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Hoyle v. Faucher*, 334 Ark. 529, 975 S.W.2d 843 (1998); *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998). The plain and unambiguous language of Ark. Const. art. 16, § 13, provides that "any" "interested" "citizen" has standing to bring an illegal-exaction case.

\*\*\*

In numerous cases, we have held that a litigant has standing· to challenge the constitutionality of a statute if the law is unconstitutional as applied to that particular litigant. *Morrison v. Jennings*, 328 Ark. 278, 943 S.W.2d 559 (1997); *Hamilton v. Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994); *Medlock v. Fort Smith Serv. Fin. Corp.*, 304 Ark. 652, 803 S.W.2d 930 (1991). The general rule is that one must have suffered injury or belong to a class that is prejudiced in order to have standing to challenge the validity of a law. *Morrison, supra; Medlock, supra.* Stated differently, plaintiffs must show that the questioned act has a prejudicial impact on them. *Tauber v. State*, 324 Ark. 47, 919 S.W.2d 196 (1996); *Garrigus v. State*, 321 Ark. 222, 901 S.W.2d 12 (1995).

\*\*\*

The question then becomes whether Article 16, Section 13, has somehow altered or increased these traditional standing requirements. We have previously distinguished two types of illegal-exaction cases that can arise under Article 16, Section 13. *See, e.g., Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997); *Pledger v. Featherlite Precast Corp.*, 308 Ark. 124, 823 S.W.2d 852 (1992). The first type of an illegal-exaction case is the "public-funds" case where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent. *See, e.g., Beshear v. Ripling*, 292 Ark. 79, 728 S.W.2d 170 (1987) (claiming that tax dollars were spent impermissibly to pay a municipal judge who had usurped his office); *Hartwick v. Thorne*, 300 Ark. 502, 780 S.W.2d

531 (1989) (alleging that public funds were impermissibly being spent on a bond issued for a different purpose).

We have explained that citizens have standing to bring a public-funds case because they have a vested interest in ensuring that the tax money they have contributed to the state treasury is lawfully spent. *Nelson v. Berry Petroleum, Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967); *Green v. Jones*, 164 Ark. 118, 261 S.W. 43 (1924). Thus, the only standing requirements we have imposed in public-funds cases is that the plaintiff be a citizen and that he or she have contributed tax money to the general treasury. *See Nelson, supra; Green, supra*. We have not required the plaintiff to trace his or her individual tax contribution to the tax money that is allegedly being spent in an illegal manner, nor have we required the plaintiff to establish a significant tax contribution to the state treasury. Hence, in public-funds cases we have given the word "interested" as used in Article 16, Section 13, a very broad construction.

### A. Chapman's Standing to Sue for Disbursement of Federal Housing and CDBG Funds through the City's General Fund

Chapman's first argument is that the City unlawfully disbursed federal funds through the City's general fund in violation of Article 12, § 5, of the Arkansas Constitution. However, as the City argued and the trial court found, Chapman does not have standing to sue for the disbursement of strictly federal funds by the City. Chapman attempts to argue that this court in the case of *Mackey v. McDonald*, 255 Ark. 978, 501 S.W.2d 726 (1974), ruled that an Arkansas citizen has standing to sue in state court when the state, county, or municipality disburses federal funds under a federal program. In *Mackey*, this court found that the plaintiff had standing to bring an illegal-exaction claim for the expenditure of federal revenue sharing funds disbursed to Pulaski County through the Federal Revenue Sharing Act because the county would be liable to repay any improper expenditures from the county treasury, which is funded by the taxpayers. The funds in *Mackey* were placed in the County's general fund, and a federal statute provided for reimbursement by the general fund for a misapplication of those funds.

In this case, however, Chapman fails to indicate under what authority she asserts that the City and taxpayers would be liable to repay any misapplied funds. Furthermore, the funds used to finance the City's redevelopment program were funds strictly derived from

federal taxes instead of state taxes. As the City's supporting affidavits and employees' deposition testimony indicated, the CDBG and Home fund money was processed through two dedicated funds established by the City and administered by its employees. These funds were never commingled with the City's general fund. As this court noted in *Gipson v. Ingram*, 215 Ark. 812, 223 S.W.2d 595 (1949), a governmental subdivision use of funds not derived from state taxpayer monies is not subject to a challenge for unlawful disbursement. Therefore, Chapman does not have standing to sue for illegal exaction for the disbursement of federal taxpayer funds paid into dedicated accounts and not commingled with the City's general fund.

### B. Chapman's Standing to Sue for the Payment of City Employee's Salaries Out of the General Fund

Chapman's second allegation on appeal is that the City unlawfully paid several administrative employees' salaries from the City's general fund. Chapman's challenge is not to the payment of city employees whose salaries are directly paid by the CDBG and Housing fund accounts, but instead to the city employees who write checks transferring federal monies through the CDBG and Home funds and the City's general fund while being paid by the City alone. According to Jackie Joyce, the City's assistant director of finance, she and others spend approximately thirty minutes to two hours a week processing the CDBG and Home fund requests. These employees are paid, however, only from the City's general fund, funded by taxpayer money, and that cost is not reimbursed by the federal programs. While the trial court attempted to dismiss this as a *de minimis* expenditure and find that Chapman did not have standing to challenge the City's use of general fund money to finance, even in small part, the federal housing program, the theory of illegal exaction does not have a *"de minimis"* exception. As such, Chapman has standing to challenge the City's expenditure of general fund monies to pay for the salaries of city employees who spend a minimal amount of time writing checks for the federal program.

### II. Constitutionality of the Expenditure of General Fund Money

Although Chapman does have standing to challenge the expenditure of money from the City's general fund, that does not

end the inquiry. Chapman must also prove that the expenditure of the money was an illegal exaction under the Arkansas Constitution.

Chapman challenges the expenditure of the City's general fund money as an illegal exaction, and bases the violation on Article 12, § 5, of the Arkansas Constitution, which states:

> *§ 5. Political subdivisions not to become stockholders in or lend credit to private corporations.*
>
> No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.

The language challenged by Chapman in this constitutional provision is the second clause, which states, "No county, city, town or other municipal corporation shall ... obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual."

■ This court, in *Hogue v. Housing Auth. of North Little Rock*, 201 Ark. 263, 144 S.W.2d 49 (1940), *Kerr v. East Cent. Ark. Reg'l Housing Auth.*, 208 Ark. 625, 187 S.W.2d 189 (1945), and *Rowe v. Housing Auth. of the City of Little Rock*, 220 Ark. 698, 249 S.W.2d 551 (1952), faced constitutional challenges to our urban and rural redevelopment laws. In *Hogue*, this court addressed various constitutional challenges to the urban redevelopment statutes, and the court actually quoted the above language in what is now Ark. Code Ann. § 14-169-202, finding that the General Assembly intended that such housing and urban redevelopment plans be designated as public purposes for which public funds may be expended. The court stated in part:

> It is also contended that the act is unconstitutional because it proposes to make donations from general revenues of the city to pay the estimated administrative expenses of the authority for its first year. We think there is nothing in this contention because the Housing Authority serves a public purpose and use and on that account and for that reason may appropriate funds from its general revenues if it has such revenues and such an appropriation becomes necessary in the interest of the public welfare.

*Hogue*, 201 Ark. at 271-272. In *Kerr*, this court addressed the extension of the redevelopment act into rural areas and, citing

*Hogue*, again determined that the act was for a public purpose and, thus, constitutional. Finally, in *Rowe*, the plaintiff specifically challenged the use of public funds for redevelopment purposes under Article 12, § 5, of the Arkansas Constitution, the provision at issue in this case. In *Rowe*, this court relied on *Hogue* and *Kerr* and again noted that the housing redevelopment statutes are constitutional on every challenged basis, including that a County or City has the "constitutional power to donate money for a public purpose in those instances where the General Assembly has designated the activity that is to be benefitted." *Rowe*, 220 Ark. at 702 (quoting *Hogue*, 201 Ark. at 271). Since these cases, the federal and state statutes have been supplemented, but have not changed in relevant form or application.

■ On appeal, Chapman's sole remaining argument is that the City unlawfully paid some employees to write checks for the federal housing programs, although the employees were paid from the City's general fund rather than from the federal funds. Chapman attempts to argue that the violation of the Arkansas Constitution occurred when paying these employees, but this court has already determined in *Kerr*, *Hogue*, and *Rowe* that using public funds for urban and rural redevelopment projects is a public purpose for which the government body, whether it be a city, county, the state, or a housing authority, has the sole ability to control. Therefore, while Chapman has standing to challenge the expenditure of funds to pay City employees, it does not mean that the challenge has merit. Our statutes allow the City to do exactly what it did in furtherance of this legitimate public purpose, and this court has specifically determined that such expenditures are not unconstitutional under Article 12, § 5, of the Arkansas Constitution. Therefore, there is no illegal exaction under Art. 16, § 13, of the Arkansas Constitution.

We affirm.