The Honorable David Rainey State Representative Post Office Box 642 Dumas, Arkansas 71639
Dear Representative Rainey:
I am writing in response to your request for an opinion on the following facts:
 The federal government has a home rehabilitation program, which is authorized by the Home Investment Partnership Act and administered through Arkansas Development Finance Authority. The program requires ADFA to meet certain matching requirements for the Home funds. Match can be in many forms, one of which is waiver of building permit fees. Would it be legal for a city to waive the building permit fee for a homeowner in this program as a match, when it does not waive the building permit fee for other homeowners not in this program?
RESPONSE
Although you have not specified any particular facts in connection with your question, it is my opinion, as a general matter, that the answer to your question is "yes," it is legal for a city to waive the building permit fee for a home constructed through the federal HOME program. Whether such action by a particular municipality is exercised in a lawful manner in all respects would depend upon the attendant facts. As a general matter, however, federal regulations authorize such waiver in order to meet the matching requirements of the program, and I can find no constitutional or statutory impediment to such waiver.
As you note, the federal "Home Investment Partnership Act," 42 U.S.C. § 12741-12756 (Title II of the Cranston Gonzales National Affordable Housing Act, P.L. 101-625, § 211), authorizes the federal "HOME program." It was created to "provide funds to expand the supply of affordable housing for very low income and low income persons." ADFA HOME Program Policy and Operations Manual, 2006 ("Introduction") (available at www.arkansas.gov/adfa). The program is implemented through federal regulations of the Department of Housing and Urban Development ("HUD"), found at 24 C.F.R. § 92. As state administrator of the HOME Program funds, ADFA has designed its programs into four main categories: the HOME Rental Housing Program; the Homeowner Housing Program; the Homebuyer Program; and Tenant-Based Rental Assistance ("TBRA"). ADFA HOME Program Policy and Operations Manual, 2006 at § II.[1]
I assume, because you mention a "homeowner in this program," that your question has reference to the Homeowner Housing Program. Units of local government, nonprofit entities, and in some circumstances, for profit entities, may receive allocations under this program. Policy and Operations Manual, 2006, at V(A). In this regard the ADFA Policy and Operations Manual states that "ADFA will accept applications for owner-occupied rehabilitation and new construction projects from units of local government or other nonprofit organizations (collectively, the "Eligible Applicant") on a first come, first served basis until all funds are committed." Id. at V, A ("Eligible Applicants"). For-profit entities may not apply for HOME Program funds to perform homeowner rehabilitation, but may apply for HOME Program funds for new construction projects. Id. The Eligible Applicant is the entity responsible for the HOME application, project development, project implementation and accountability for uses of all HOME funds. Id. ADFA grants HOME Program funds to the approved Eligible Applicant, who will then loan funds to homeowners, as approved by ADFA, for eligible HOME activities.Id. Notes and mortgages are executed by the homeowners in favor of ADFA. Id. at § K. Depending upon the type of project, the loans are either repayable or forgivable, and are at no, or very low, interest rates. Id.
With regard to your question concerning the waiver of building permit fees in connection with such projects, in my opinion the following federal regulation is applicable:
§ 92.220 Form of matching contribution.
 (a) Eligible forms. Matching contributions must be made from nonfederal resources and may be in the form of one or more of the following:
* * *
(2) Forbearance of fees.
 (i) State and local taxes, charges or fees. The value (based on customary and reasonable means for establishing value) of State or local taxes, fees, or other charges that are normally and customarily imposed or charged by a State or local government on all transactions or projects in the conduct of its operations, which are waived, foregone, or deferred (including State low-income housing tax credits) in a manner that achieves affordability of HOME-assisted projects, may be counted as match. The amount of any real estate taxes may be based on post-improvement property value. For taxes, fees, or charges that are forgiven for future years, the value is the present discounted cash value, based on a rate equal to the rate for the Treasury security with a maturity closest to the number of years for which the taxes, fees, or charges are waived, foregone, or deferred.
 (ii) Other charges or fees. The value of fees or charges associated with the transfer or development of real estate that are normally and customarily imposed or charged by public or private entities, which are waived or foregone, in whole or in part, in a manner that achieves affordability of HOME-assisted projects, may be counted as match. Fees and charges under this paragraph do not include fees or charges for legal or other professional services; professional services which are donated, in whole or in part, are an eligible matching contribution in accordance with paragraph (a)(7) of this section.
 24 C.F.R. § 92.220.
In my opinion the language above encompasses building permit fees ordinarily imposed by municipalities. Federal regulations thus authorize the waiver of such fees as counting toward the required "match." Your question whether it is "legal for a city to waive the building permit fee for a homeowner in this program as a match, when it does not waive the building permit fee for other homeowners not in this program." In my opinion the answer to this question is generally "yes." Although I have not found any legal precedent on the precise point you raise, in my opinion the waiver of building permit fees, as authorized by federal regulations, does not offend any constitutional or Arkansas statutory law.[2]
Support for this proposition can be drawn from the case ofChapman v. Bevilacqua, 344 Ark. 262, 42 S.W.3d 378 (2001). InChapman, the plaintiff filed an illegal exaction[3] suit "against thirty-two private property owners in the City [of Fort Smith] seeking to recover from these defendants the value of repairs or rehabilitations of their private property, which had been accomplished in 1997 and 1998 through . . . federally funded housing programs [Community Development Block Grants and Home funds.]" Id. at 265. "Overall, Chapman argued that while the purported beneficiaries under these federal and state housing programs are the citizens, because such improvements remedy urban blight, the actual beneficiaries were the homeowners who benefited from the federal grants from taxpayer dollars." Id.
at 266. "Chapman challenge[d] both the expenditure of federal funds processed through the City's general fund, as well as the use of the City's general fund money to pay a de minimus
portion of some city employees' salaries to administer the program." Id. at 268. Her "argument [wa]s that the City unlawfully paid some employees to write checks for the federal housing programs, although the employees were paid from the City's general fund rather than from the federal funds." Id. at 273. The plaintiff specifically invoked Arkansas Constitution, art. 12, § 5, which prohibits counties, cities and towns, or other municipal corporations from becoming stockholders in any company, association or corporation, or from obtaining or appropriating money for, or loaning their credit to, any corporation, association, institution or individual. In response, "[t]he City argued that federal statutes provide for such rehabilitation programs, and that the City's compliance with these statutes render[ed] the program legal." Id. at 266.
The court upheld the use of city employee time to process payments related to the program, stating "using public funds for urban and rural redevelopment projects is a public purpose for which the government body, whether it be a city, county, the state, or a housing authority, has the sole ability to control."Id. at 273. The court also stated that "[o]ur statutes allow the City to do exactly what it did in furtherance of this legitimate public purpose, and this court has specifically determined that such expenditures are not unconstitutional under Article 12, § 5, of the Arkansas Constitution. Therefore, there is no illegal exaction under Art. 16, § 13, of the Arkansas Constitution." Id.
In my opinion, similarly, the waiver of building permit fees, as permitted by federal regulations, further the public purpose mentioned in Chapman, and would not be held contrary to the Arkansas Constitution. In addition, a review of Arkansas statutes evidences a broad grant of authority to municipalities to participate in federal housing programs. See e.g., A.C.A. §14-169-901 to -903 (Repl. 1998) (authorizing municipal and county governments to "participate fully" in the Community Development Act of 1974); and A.C.A. § 14-169-228 (Repl. 1998) (authorizing state public bodies to perform certain actions to cooperate with housing projects of the federal government).
Finally, I can perceive no objection under the United States Constitution to such action. As I recently stated in Op. Att'y. Gen. 2004-066:
 "Discrimination," in the legal context, arises out of the constitutional principle of "equal protection," which is set forth in the 14th Amendment to the United States Constitution, and in Article 2, §§ 2
and 3 of the Arkansas Constitution. The equal protection doctrines of both the Arkansas and the U.S. Constitutions prohibit certain types of "classifications." A classification is the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrines. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class (such as a particular racial group, see, e.g., Loving v. Virginia, 388 U.S. 1 (1967)) or a fundamental right (such as the right to vote, see Dunn v. Blumstein, 405 U.S. 330 (1972)), it is necessary to show that the disparity is arbitrary. That is, the disparity must be shown to have no rational basis — no rational relation to a legitimate end. Fitzgerald v. Racing Assn. of Central Iowa,
02-695, (U.S. 2003); Vacco v. Quill, 521 U.S. 793
(1997); Romer v. Evans, 517 U.S. 620, 631 (1996); Clements v. Fashing, 457 U.S. 957 (1982); Seagrave v. Price, 349 Ark. 433, 79 S.W.3d 339 (2002); Craft v. City of Fort Smith, 335 Ark. 417, 984 S.W.2d 22
(1998). Economic classifications are usually subjected to the rational basis standard of scrutiny. Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1985).
 In applying the rational basis standard, the courts must not only presume the constitutionality of the challenged classification, but they must also uphold the classification even without requiring a showing of an actual rational basis, if any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Eady v. Lansford, 351 Ark. 249, 92 S.W.3d 57 (2002); Ester v. National Home Ctrs., Inc., 335 Ark. 356, 981 S.W.2d 91 (1998); Reed v. Glover, 319 Ark. 16, 889 S.W.2d 729 (1994); Fayetteville Sch. Dist. v. Arkansas State Bd. of Educ., 313 Ark. 1, 852 S.W.2d 122 (1993); Arkansas Hospital Assoc. v. State Board of Pharmacy, 297 Ark. 454, 763 S.W.2d 73 (1989).
 Id. at 2.
In my opinion the same public purpose surrounding the low-income housing efforts of municipalities discussed inChapman, supra, would provide a "rational basis" for the waiver of building permit fees on properties participating in the HOME Program, while denying a similar waiver to those not participating in the Program. In my opinion, therefore, the answer to your question is generally "yes." As noted earlier, however, the question of whether any particular municipality is undertaking the waiver of building permit fees in a lawful manner would have to be determined with reference to all the attendant facts.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE
Attorney General
MB:ECW/cyh
[1] Although ADFA is the state administrator of the HOME Program, it is my understanding that four cities in Arkansas, Little Rock, North Little Rock, Fort Smith and Pine Bluff, are also independently authorized as "participating jurisdictions" under federal regulations. See 24 C.F.R. §§ 92.2 and 92.105. You have not indicated to which city in Arkansas your question pertains. My analysis regarding the waiver of building permit fees would appear to apply in either case.
[2] Because you have not specified any particular facts in this regard, I cannot determine whether a particular municipality has, as a factual matter, exercised the waiver in a lawful manner through the passage of a local ordinance or otherwise.
[3] See Arkansas Constitution, art. 16, § 13.