The Honorable Larry Teague State Senator Post Office Box 903 Nashville, Arkansas 71852
Dear Senator Teague:
This is my opinion on your questions about A.C.A. § 22-6-501.[1] *Page 2 
The law results from legislative enactments of 1939, 1991, and 2007, and is sometimes referred to in this opinion as the "Act."
Accurately entitled "AN ACT to Transfer Tax-Forfeited Lands Adjoining the Property of State Institutions to Such Institutions for Their Use,"Act 156 of 1939 directed the Commissioner of State Lands, upon a state institution's application, to deed the institution any land forfeited to the state for nonpayment of taxes that adjoins the institution's land, for nominal consideration. See Act 156 of 1939, § 1, codified as amended at A.C.A. § 22-6-501(a)(1), (c).
The 1991 amendment repealed the adjoining-land requirement, expanded eligibility to specified local governments and additional state bodies, specified applications' content, and made the granting of applications discretionary with the Commissioner. It prescribed deed restrictions that require a recipient to file a new application for any change in use, and provided that land will revert to the state, to be treated again as tax-forfeited, if the recipient determines it can no longer be *Page 3 
used. And it provided that "[c]ollection of any outstanding ad valorem property tax indebtedness shall be stayed by the Commissioner while title to the property remains with the [recipient] governmental unit."Act 807 of 1991, § 3, codified as amended at A.C.A. § 22-6-501(a), (b), (d).
The 2007 amendment made optional the land-use deed restrictions that were mandatory in the 1991 amendment and authorized a city or town[2] to transfer property acquired under the Act. It allowed the Commissioner, before a conveyance, to consider whether "the prospective purchaser" has a history of not paying fines or taxes or has recently had property forfeited for nonpayment. The 2007 amendment did not, however, repeal the tax collection stay or the provisions about reversion to the state. SeeAct 1036 of 2007, §§ 1, 2, codified at A.C.A. § 22-6-501(b)(1), (e), (f).
Your request states that "[c]ertain cities and public facilities boards are in the process of forming land banks" and that "[i]t is anticipated that cities and public facilities boards created to operate land banks" will apply to the Commissioner to receive land under the Act.
"Land bank" is not a term of art under Arkansas law.[3] A standard legal reference defines it as a "bank created under the Federal Farm Loan Act to make loans . . . *Page 4 
secured by farmland" or a "program under which land is retired from agricultural production." BLACK'S LAW DICTIONARY 956 (9th ed. 2009). I assume your request does not concern an entity like either of those defined, but rather an entity or program similar to the City of Little Rock Land Bank Commission, whose stated mission is
 to reverse blight, increase home ownership and stability of property values, provide affordable housing, improve the health and safety of neighborhoods within the City . . . and maintain the architectural fabric of the community through the study, acquisition, and disposition of vacant, abandoned, tax delinquent, and city lien property while collaborating with citizens, neighborhoods, developers, non-profit organizations and other governmental agencies.
Mission Statement, City of Little Rock Land Bank Commission (visited Jan. 14, 2010) 
http://www.littlerock.org/citydepartments/ housingandneighborhoodservic-es/landbankcommission/.
Because the meaning of "land bank" is not fixed and your request does not specify the structure of any land bank or its precise role in any transaction under the Act, nothing in this letter should be interpreted as an opinion specifically concerning the nature or authority of any particular entity or program referred to as a land bank.
Your request poses 12 questions, ten of which expressly inquire about public facilities boards as well as cities, and all of which may fairly be interpreted to refer to transactions that apparently are expected to involve public facilities boards. The Act provides for deeds to counties, cities, school districts, and state departments, agencies, and institutions, and refers to any one of them as a "governmental unit."See A.C.A. § 22-6-501(a)(1), (b)(1). Public facilities boards are not named as eligible governmental units in the Act. Cf. id.
Additionally, the ordinance creating a public facilities board "[s]hall specify the powers granted to the board" and "[m]ay place specific limitations on the exercise of the powers granted." A.C.A. § 14-137-107(a)(2)(A), (B) (Repl. 1998). Because I have no information about the structure of any Act-related transaction involving a public facilities board or about the powers, and limitations thereon, of any particular public facilities board, I state *Page 5 
no opinion here concerning public facilities boards in particular, and I have rephrased your questions to refer to cities only.
I have also paraphrased your questions generally and have rearranged them in six topic areas:
Property Tax Forgiveness 1. May the Commissioner forgive property taxes, interest, and penalties?
Property Tax Lien 2. May a city acquire land under the Act free of a property tax lien?
 3. Is land conveyed to a city under the Act encumbered by a lien?
 4. If the answer to question (3) is "yes," does the lien continue until payment in full?
 5. If a city sells land acquired under the Act, will the lien continue?
 6. May a city convey land acquired under the Act to a third party free of the tax lien, interest, and penalties that may be stayed under the Act?
Land Donations 7. May a city donate land acquired under the Act to a third party?
 8. Does a city's gift of land acquired under the Act to a third party violate the Arkansas Constitution?
Municipal Property Sales Procedures 9. Is a city required to comply with otherwise applicable municipal sales procedures when conveying land acquired under the Act? *Page 6 
New Tax Assessments/Liability 10. Is a city's land acquired under the Act exempt from assessment for property taxes?
 11. If a city conveys property acquired under the Act to a third party, is the property subject to assessment either immediately or during the following assessment year?
Public Purpose 12. Does a city's acquisition of residential property and subsequent sale of the property to a third party for private residential development constitute a public purpose?
RESPONSE
In my opinion, for the reasons set forth below, the Commissioner has no authority to forgive property taxes in general or specifically in connection with transactions under the Act; the property tax lien survives the Commissioner's conveyance of land to a city under the Act, although the lien is unenforceable while the city holds title; the lien generally survives until payment of the tax obligation in full; a city's conveyance of land acquired under the Act to a third party is made subject to the lien; a city may not donate property to a corporation, association, institution, or individual; and a city must comply with otherwise-applicable municipal sales procedures when selling land acquired under the Act. I am unable to provide answers to your final three questions as they depend on the facts of each case, although I do discuss and opine with respect to the effective dates of tax exemptions and tax liabilities.
Property Tax Forgiveness
Question 1: May the Commissioner forgive property taxes, interest,and penalties? *Page 7 
The Commissioner has no general authority of which I am aware to forgive property taxes or related charges. To the contrary, he is charged to dispose of forfeited land "as provided by law," and the relevant law provides that a purchaser of forfeited land from the Commissioner generally "shall pay all taxes, interest, penalties, and other costs." A.C.A. §§ 22-5-207(a) (Repl. 2004) and26-37-201(c) (Supp. 2009), respectively. The Commissioner is thus a principal participant in a legal arrangement that contemplates, and requires in the normal course, full payment of all property taxes and related amounts due.
The Act does not expressly provide that the Commissioner may forgive taxes or related charges in connection with transactions under the Act. To the contrary, it refers to outstanding tax obligations in one instance only, providing for a stay of collection of those obligations while title to the land is held by a governmental unit. See
A.C.A. § 22-6-501(d)(2). By definition, a stay is a temporary postponement or suspension, not a permanent, irrevocable termination.See, e.g., BLACK'S LAW DICTIONARY 1548 ("stay"). In providing for a stay, the legislature cannot, in my view, reasonably be understood to have been providing for forgiveness in the sense of a permanent termination of the outstanding tax liability. The Act contains no reference I perceive, express or implied, to any power of the Commissioner to forgive taxes. I conclude, then, that the Act does not provide any authority for the Commissioner to forgive taxes in connection with any transaction under the Act or otherwise.
Notwithstanding the foregoing, I know of two instances in which property taxes might be said to be forgiven by the Commissioner in accordance with governing law.
First, the Commissioner of State Lands Urban Homestead Act, A.C.A. §§ 20-80-401 to-411 (Repl. 2001), provides that the Commissioner "may waive outstanding taxes, penalties, and interest" in connection with a donation of tax-forfeited urban land for homestead purposes. A.C.A. § 20-80-408(a). The waiver provision is clearly limited to transfers under the Urban Homestead Act and is not authority for the Commissioner to waive or forgive taxes in general or in transactions under the Act in particular.
Second, another statute provides that *Page 8 
 [a]ll tax delinquent land which . . . remains neither sold nor redeemed two (2) years from the date of the . . . [unsuccessful] public auction . . . may not be subject to the provisions of Act 626 of 1983, as amended, or any other Act relating to the sale of land by the Commissioner, but may be sold by the Commissioner at public sales or by negotiation for whatever price the Commissioner determines to be in the best interest of the State and its local taxing units.
Act 626 of 1983, § 7, as amended (uncodified; see A.C.R.C. Notes to A.C.A. § 26-37-101 (Repl. 1997)).
Act 626 of 1983, codified as amended at A.C.A. §§ 26-37-101 to-105 (Repl. 1997, Supp. 2009),26-37-201 to-205 (Supp. 2009), and26-37-301 to-303 (Repl. 1997, Supp. 2009), is the law generally governing the Commissioner's disposition of tax-forfeited land. It includes the provision, discussed above, that requires a purchaser of tax-forfeited land to pay all taxes and related charges. See
A.C.A. § 26-37-201(c). It is my understanding, however, that the Commissioner has historically interpreted the uncodified language quoted above to authorize him to sell land for an amount less than the sum of all taxes and related amounts owing, provided the sale is at least two years after an unsuccessful public auction. This interpretation appears to be accurate and reasonable. The uncodified statute quoted above says that Act 626 (including its minimum-price requirement) does not apply to the sales described. The Commissioner may therefore sell for whatever price he "determines to be in the best interest of the State and its local taxing units," whether or not the price is less than the sum of all taxes and related amounts due.
It is also my understanding that, when the Commissioner sells land under this authorization for less than the sum of all taxes and related amounts due, the local taxing units accept whatever amount is tendered by the Commissioner in full satisfaction of all taxes and related amounts due for the years specified in the Commissioner's deed. Such a settlement, for an amount less than the entire amount due, might be characterized as tax forgiveness by the Commissioner or the local taxing units.
While the Commissioner might thus be said to have limited, specific authority under these two statutes to forgive property taxes and related charges, neither of the statutes applies to transactions under the Act. *Page 9 
It is my opinion, accordingly, that the Commissioner may not forgive property taxes or related charges in connection with a transaction under the Act, as he has no general authority to forgive property taxes or related charges, the Act itself does not authorize forgiveness, and neither of the specific statutory authorizations to waive or forgive taxes of which I am aware applies to transactions under the Act.
Property Tax Lien Question 2: May a city acquire land under the Act free of aproperty tax lien?
Question 3: Is land conveyed to a city under the Act encumbered bya lien?
Question 4: If the answer to question (3) is "yes," does the liencontinue until payment in full?
Question 5: If a city sells land acquired under the Act, will thelien continue?
Question 6: May a city convey land acquired under the Act to athird party free of the tax lien, interest, and penalties that may bestayed under the Act?
Common law does not automatically place a lien on property subject to a tax; rather, the tax lien is a creature of statute, which dictates matters concerning the lien like its creation, duration, and other characteristics. See, e.g., Collar v. Crowley,202 Ark. 1159, 1164, 155 S.W.2d 578 (1941) ("[I]t is, of course, as essential that the law providing how a tax lien may be imposed be complied with as it is that the law in reference to the enforcement of the lien be complied with"); Rose v. W. B. Worthen Co.,186 Ark. 205, 53 S.W.2d 15 (1932) (quoting and expressly relying on statute now codified at A.C.A. § 26-34-101 (Repl. 1997) in determining that property taxes are secured by lien); Little Red River LeveeDist. No. 2 v. State, 185 Ark. 1170, 52 S.W.2d 46 (1932) (saying not that lien existed in absence of statute, but that state exercised its "paramount right" to make taxes a first lien on property by enacting the statute now codified at A.C.A. § 26-34-101, providing for such lien). *Page 10 
As suggested, a property tax lien is created by A.C.A. § 26-34-101(b), which states in part that "[a]ll taxes assessed shall be a lien upon and bind the property assessed . . . and shall continue until the taxes . . . shall be paid." See also
A.C.A. §§ 26-34-101(a) ("Taxes assessed upon real and personal property shall bind them and be entitled to preference over all judgments, executions, encumbrances, or liens whensoever created").
As noted above, the Act provides that "[c]ollection of any outstanding ad valorem property tax indebtedness shall be stayed by the Commissioner while title to the property remains with the governmental unit." A.C.A. § 22-6-501(d)(2). The language used clearly indicates that the lien, a property interest that facilitates collection of outstanding tax indebtedness, survives the conveyance under the Act, even though it cannot be foreclosed while a city holds title. I perceive nothing in the Act that suggests otherwise. In my opinion, then, the Act provides no mechanism whereby a city may acquire land free of an existing property tax lien even though the lien is not enforceable while the city holds title.
As further noted above, the property tax lien established by A.C.A. § 26-34-101(b) continues "until the taxes . . . shall be paid." It is accordingly my opinion that, in general, [4] the property tax lien continues until taxes owing on the land are paid in full.
It is also my opinion that any existing property tax lien will bind the land and be enforceable against the land following a city's conveyance of land acquired under the Act to a non-governmental third party. I reach this conclusion because the Act provides for a stay of collection only "while title to the property remains with the governmental unit." A.C.A. § 22-6-501(d)(2). The legislature's provision of a stay in one instance implies the absence of a stay or forgiveness or any other impediment to collection in other instances. See, e.g.,State v. Oldner, 361 Ark. 316, 206 S.W.3d 818 (2005) (the legislative expression of one thing may be interpreted as the exclusion of another). If the legislature had intended an outstanding tax obligation to be collectible only when land reverts to the state (as contemplated by A.C.A. § 22-6-501(b) and (d)), and not when a city conveys it to a third party (as contemplated by A.C.A. § 22-6-501(e)), it could easily have so *Page 11 
provided. Cf. A.C.A. § 20-80-408 (provision of Commissioner of State Lands Urban Homestead Act distinguishing between general property taxes, subject to waiver by the Commissioner thereunder, and other liens and encumbrances, such as improvement district assessments, outside the Commissioner's authority). Instead, the Act equates, for purposes of the outstanding tax obligation and the associated lien, all title holders other than the governmental unit that received the land from the Commissioner under the Act. I accordingly conclude that a city may not transfer land acquired under the Act free of the existing property tax lien.
Land Donations
Question 7: May a city donate land acquired under the Act to athird party?
Question 8: Does a city's gift of land acquired under the Act to athird party violate the Arkansas Constitution?
The Act provides that a city or town[5] may transfer property acquired thereunder "pursuant to any lawful authority of the city or town." A.C.A. § 22-6-501(e)(1). In my view, the provision evidences a legislative determination to place property acquired under the Act on the same footing, in terms of a city's authority to convey it, as any other city property. In other words, the Act clearly allows a city to transfer land acquired thereunder, provided it has independent "lawful authority" to do so and provided it complies with any requirements of authorizing law.
The constitution provides that "[n]o county, city, town or other municipal corporation, shall . . . obtain or appropriate money for . . . any corporation, association, institution or individual." Ark. Const. art. 12, § 5.
This office has long taken the position that the prohibition applies to tangible property as well as money. See, e.g., Op. Att'y Gen. 2008-179 (municipality may not donate surplus furniture); 2007-161 (explaining general prohibition at length but opining that it does not necessarily invalidate law permitting award of service *Page 12 
weapon to retiring law enforcement officer); and 2004-055, 2002-099, and 2001-003 (constitution prohibits municipal real property donations).
It is, accordingly, my opinion that the constitution prohibits a city's gift of land to "any corporation, association, institution or individual." Ark. Const. art. 12, § 5. For more detailed information, please refer to the cited opinions, and the authorities cited and discussed therein, including without limitation the statutory prohibition on municipal donations contained in A.C.A. § 14-42-108(b)(1) (Repl. 1998).
The prohibition on municipal donations can alternatively be characterized as a requirement that municipalities receive adequate consideration for transfers of public property. See, e.g., Op. Att'y Gen. 2008-133, 2004-055. "Adequate consideration" is not necessarily wholly cash, or other tangible or intangible property, in each case. Rather, public advantage may be a significant part, perhaps all, of the required consideration. See, e.g., City of Blytheville v.Parks, 221 Ark. 734, 255 S.W.2d 962 (1953); Op. Att'y Gen. 2004-055, 2001-180. Public advantage may take the form of freeing the transferor governmental unit from a property acting as a drain on the unit's financial and other resources. See Op. Att'y Gen. 2005-300.
Apart from constitutional and statutory restraints, a city should comply with any restrictive covenants or reservations embodied in its deed from the Commissioner, which covenants or reservations may prohibit the transfer of land acquired under the Act to any person other than the state. See A.C.A. § 22-6-501(b).
Municipal Property Sales Procedures
Question 9: Is a city required to comply with otherwise applicablemunicipal sales procedures when conveying land acquired under theAct?
As discussed above in response to questions 7 and 8, the Act equates, for purposes of a city's transfer, real property acquired under the Act and any other city-owned real property.
It is my opinion, accordingly, that a city must comply with applicable city sales procedures when transferring land acquired under the Act to the same extent, if *Page 13 
any, that it must comply with such procedures when transferring other municipal land. Cf. Op. Att'y Gen. 91-416 (in disposing of property acquired under drug forfeiture laws, city must comply with general procedures governing property sales, including without limitation A.C.A. § 14-54-302 (Supp. 2009)).
New Tax Assessments/Liability
Question 10: Is a city's land acquired under the Act exempt fromassessment for property taxes?
Question 11: If a city conveys property acquired under the Act toa third party, is the property subject to assessment either immediatelyor during the following assessment year?
"[P]ublic property used exclusively for public purposes" is "exempt from taxation." Ark. Const. art. 16, § 5. But public property not so used is subject to tax. See, e.g., City of Little Rock v.McIntosh, 319 Ark. 423, 892 S.W.2d 462 (1995); Op. Att'y Gen. 2003-139. This office has previously stated that definitive answers to questions about the applicability of the exemption in particular cases
 will involve factual determinations that I am in any event unable and unauthorized to make. The authority to approve or disapprove a particular tax exemption has not been vested in this office. Rather, such authority is vested in the first instance in the local tax assessor, see A.C.A. § 26-26-1001, subject to review as provided by law. A.C.A. §§ 26-27-317 and-318. The assessor must decide, on a case-by-case basis following a review of all pertinent facts, whether the property in question is "public property used exclusively for public purposes[,]" (Ark. Const. art. 16, § 5), and thus exempt from ad valorem taxation. Accordingly, questions regarding the tax-exempt status of particular property cannot be addressed in the hypothetical. Rather, all of the surrounding facts and circumstances must be examined in order to identify the exact nature, extent and usage of the particular property. See generally Hilger v. Harding College, 231 Ark. 686, 689, 331 S.W.2d 851 (1960).
Op. Att'y Gen. 2009-112. *Page 14 
Your request contains no facts about the uses to which cities may put land acquired under the Act. It seems likely that cities will, in most applications under the Act, propose land uses that will satisfy the "used exclusively for public purposes" test. Accordingly, the Commissioner's approval of a city's application might in most cases justifiably be taken as evidence that the land will be exempt from property taxes in the city's hands. It is clear, on the other hand, that the Act does not expressly condition the granting of an application on a finding that the proposed use will be "exclusively for public purposes." Rather, it appears that the Commissioner may grant any application that promotes, or at least is not contrary to, "the best interests of the health and general welfare of the state and its citizens." A.C.A. § 22-6-501(a)(2)(C). The Commissioner may also consider, "[p]rior to conveyance of property," whether "the prospective purchaser" has "a pattern or practice" of not paying fines for building code violations or not timely paying property taxes, or has had property recently forfeited for tax delinquency. A.C.A. § 22-6-501(f). These considerations, in my view, are proper and legitimate, but they appear to go to questions of financial responsibility and wherewithal, not to public purpose use per se. And as stated in the opinion quoted above, the taxability determination is the assessor's to make. As a result, it is impossible for me to profitably generalize further about the tax status of land acquired under the Act and held by a city.
Land purchased from a city by a third party may or may not be constitutionally exempted from taxation. In addition to the exemption for public property used exclusively for public purposes, there are exemptions for churches, cemeteries, school buildings, libraries, and property of public charities. See Ark. Const. art. 16, § 5(b). Having no specific information about the nature of transferees and their uses of land, I am unable to opine generally on the tax status of such land in their hands.
It appears your questions may concern the timing of effectiveness of a tax exemption assumed to be available upon a city's acquisition of land from the Commissioner, and of a new tax liability arising after transfer by a city in whose hands the property was assumed to be exempt to an owner assumed to be liable for property taxes. In my opinion, land's ownership and use on the first Monday in January determine whether or not it is exempt from taxation for that year. See
A.C.A. 26-34-101(b); see also Op. Att'y Gen. 2008-023. *Page 15 
 [T]he manner in which real property taxes are assessed and collected depends upon the status of the property as of the first [Monday] of January. Arkansas law does not contain a provision which would allow taxes to be assessed only for the portion of the year in which a taxable organization holds the property. If the property was [then] taxable, . . . the correct manner in which to proceed is for the taxes to be assessed for the entire year, without regard to a change in the status during the year.
Op. Att'y Gen. 86-494.
Thus, for example, if a third party whose ownership will be taxable acquires land that was tax-exempt in the hands of a city, and the acquisition occurs after the first Monday in January, it is my opinion that the land will continue to be exempt from property taxes for the remainder of the year and will be subject to assessment and taxation on the first Monday in January of the following year.
Public Purpose Question 12: Does a city's acquisition of residential property andsubsequent sale of the property to a third party for private residentialdevelopment constitute a public purpose?
I am not entirely certain of your question's context. This office has opined that a municipal expenditure
under A.C.A. 14-58-303 (Supp. 2009) must have a proper municipal or public purpose and that it must comply with the common law public purpose doctrine which requires that public expenditures be for public purposes and with Ark. Const. art. 12, § 5, which prohibits the appropriation of public money to private parties. See Op. Att'y Gen. 2008-026.
Because a city will not necessarily expend any money in obtaining land from the Commissioner under the Act or in selling the land to a third party, it is not clear that the public purpose rules referred to above will expressly and necessarily bind the city in either transaction. I assume for purposes of this opinion, however, that a city will, in fact, expend money in connection with one or both transactions, or that the public purpose rules apply even to municipal actions not involving any expenditure. See Stuttgart Rice Mill Co. v. Crandall,203 Ark. 218, 157 S.W.2d 205 (1941) (tax levy subject to public purpose requirement); A.C.A. § 14-54-104(2) (Repl. 1998) *Page 16 
(city of first class may sell public grounds that cannot be used for their intended purpose and apply the proceeds "for public or [municipal] purposes"); Op. Att'y Gen. 2010-043 ("Any legislative power may be exercised only for a public purpose"). Additionally, this office has interpreted A.C.A. § 14-54-302, a statute generally authorizing municipalities to acquire and dispose of property, to require a public purpose in connection with a disposition of public property then being used to serve a public interest. See Op. Att'y Gen. 2009-193, 2008-179.
The question whether a city's actions in connection with transactions under the Act have a sufficient public purpose to satisfy the provisions of law referred to above, and any others that may be applicable, is one of fact. Accordingly, only a finder of fact acquainted with all the relevant circumstances can resolve the issue and I am unable to opine definitively in response to your question. For more information about how a court would determine the question in a particular case, see Op. Att'y Gen. 2008-026 and the authorities cited therein. You may also wish to refer to Chapman v. Bevilacqua,344 Ark. 262, 42 S.W.3d 378 (2001), and the authorities cited therein, discussing and generally finding a public purpose to be present in connection with the housing and redevelopment laws there at issue.See also Op. Att'y Gen. 2006-004 (discussing Chapman).
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The statute provides:
 (a)(1) The Commissioner of State Lands is authorized upon application of the director of any state department or agency, the management or the board of trustees of any state institution, or the chief executive of any county, city, or school district of this state to issue to the applying governmental unit a deed for land listed on the Commissioner of State Lands' records as having been forfeited for the nonpayment of taxes.
 (2) The application shall include the following:
 (A) The proposed use of the land;
 (B) The proposed duration for the stated use; and
 (C) The division or department designated for the maintenance and operation of the property once deeded. Moreover, the Commissioner of State Lands is authorized to accept the application as submitted or recommend modifications to the application. The Commissioner of State Lands is further empowered to disallow any application determined by the Commissioner of State Lands to be contrary to the best interests of the health and general welfare of the state and its citizens.
 (b)(1) The deed issued by the Commissioner of State Lands to a state department or agency, state institution, city, county, or school district may contain restrictive covenants or reservations stating that should the governmental unit no longer desire to use the land for the proposed use stated in the application, said governmental unit shall submit a subsequent letter of application to the Commissioner of State Lands to request change in the use of the property, and the Commissioner of State Lands shall accept, modify, or disallow the request.
 (2) Moreover, should the governmental unit determine that the property can no longer be utilized, the property shall revert to the state, be held by the Commissioner of State Lands, and be treated as tax-forfeited land subject to the powers and authority of the Commissioner of State Lands.
 (3) Because this section applies to the disposition of tax-forfeited land, § 22-6-601 shall not apply herewith.
 (c) No consideration shall be required for the transfer except the fee of one dollar ($1.00) as required by law.
 (d)(1) All deeds granted by the Commissioner of State Lands prior to the passage of this section are confirmed, and the title of all purchases under the deeds from the Commissioner of State Lands are quieted, established, and confirmed.
 (2) Collection of any outstanding ad valorem property tax indebtedness shall be stayed by the Commissioner of State Lands while title to the property remains with the governmental unit.
 (3) Should the property revert to the state pursuant to subsection (b) of this section, the property may be sold as prescribed by the Commissioner of State Lands.
 (e)(1) Land donated by the Commissioner of State Lands under this section may be used for any lawful purpose or transferred pursuant to any lawful authority of the city or town.
 (2) Owners of property donated to a city or town under this section shall not have any right to retain any of the appraised value of the property.
 (f) Prior to conveyance of property, the Commissioner of State Lands may give consideration to the following issues:
 (1) Whether the prospective purchaser has a pattern or practice of not paying fines resulting from a citation for violation of state laws or regulations or local codes and ordinances;
 (2) Whether the prospective purchaser has a pattern or practice of not timely paying property taxes; and
 (3) Whether the prospective purchaser was the prior owner of real property that was transferred to the Commissioner of State Lands as a result of tax delinquency during the preceding three (3) years.
A.C.A. § 22-6-501 (Supp. 2009).
[2] This and another part of the 2007 amendment, codified at A.C.A. § 22-6-501(e), refer only to cities and towns, rather than to the whole universe of governmental units, including state bodies, that are eligible to receive land under the Act.Compare A.C.A. § 22-6-501(e)(1), (e)(2) with
A.C.A. § 22-6-501(a)(1), (b)(1). Note, too, that towns, while named in the 2007 amendment as authorized to transfer land acquired under the Act, are not named in the Act as eligible recipients of land.Compare A.C.A. § 22-6-501(a)(1), (b)(1) with
A.C.A. § 22-6-501(e)(1), (e)(2). I do not understand your request to be addressed to the differences, if any, in the authority granted by the Act to various governmental units. Your request refers to cities, which are clearly both eligible to receive and authorized to transfer land under the Act. See A.C.A. § 22-6-501(a)(1), (e)(1). I accordingly pursue no further here the questions raised by the language of the 2007 amendment.
[3] The term appears four times in the Arkansas Code. Two references are to "Federal Land Bank" as an issuer of securities in which certain Arkansas Development Finance Authority guaranty funds may be invested.See
A.C.A. §§ 15-5-407(a)(2)(B)(ix),-707(a)(2)(B)(ix) (Repl. 2009). Another reference authorizes a land bank to foreclose a city clean-up lien if the city has established the land bank and assigned the lien to it.See A.C.A. § 14-54-904(a)(1) (Supp. 2009). The fourth reference lists "land bank" as something that may be a "business association" as defined in the Unclaimed Property Act. See
A.C.A. § 18-28-201(3) (Supp. 2009). No state statute defines "land bank."
[4] Two exceptions are discussed in my answer to your first question.
[5] See supra note 2.